The indictment was found at WAKE Spring Term, 1833. In the sheriff's return of the venire, one of the persons summoned, was stated in the record to be named Joes Jones, and the clerk in making up the record, stated "on ballotting, the following persons are duly elected, sworn and charged to serve as grand jurors at this term, to-wit, Seth Jones, foreman," etc., and among the rest Joel Jones. The name of Joel Jones did not appear on the original venire, otherwise than as above.
The prisoner when put to the bar, offered the following affidavit for the removal of his cause:
"Benjamin Seaborn maketh oath that he is advised by his counsel, that a state of feeling exists in this county, so firmly seated as to his guilt, that a fair and impartial trial therein can be hardly expected."
Upon this affidavit, the cause was ordered to be removed "to the county of Cumberland, for trial, to be had in said court to be held for said county, on the second Monday after the fourth Monday in April," etc.
On the trial in Cumberland, the evidence for the State consisted in a great variety of circumstances, among which was the fact of a large amount of money being found upon the prisoner shortly after the fire, part of the money was identified by Smith as his, and it was proved that the same was in the house at 9 o'clock of the night of the burning. The prisoner had made divers statements as to his possession of the money and after his arrest he admitted that he had the money in his pocket when the house was burned, but said that he had received it from a negro Harry, the slave of Smith.
On this part of the case, his Honor, Judge Martin instructed the jury, that the degree of credit to be given to this (307) declaration, was for their exclusive consideration, that they should attend to and weigh all the circumstances attending it: the situation of the prisoner, his previous statements, his apparent inducements, etc., and should decide what *Page 251 
impression was made upon them, as to its truth or probability; and upon the whole, if they were satisfied of his guilt beyond a reasonable doubt, they should convict him; if they entertained a reasonable doubt they should acquit.
The jury returned a verdict of guilty; a motion was made for a new trial, which being refused, the following reasons were offered in arrest of judgment: 1st. That the bill of indictment was not found by a grand jury properly constituted.
2dly. That the order for removal was irregular, not being founded on a sufficient affidavit.
3dly. That there was no order for the removal of the cause to Cumberland Superior Court.
4thly. That the indictment was not sufficient.
5thly. For insufficiency of the record.
His Honor arrested the judgment, whereupon Mr. Solicitor Troy appealed to this court.
Upon the motion for a new trial, I agree with the Judge of the Superior Court, that there is no ground for it.
But I do not concur with him that the judgment ought to be arrested. As the consequences of this difference are so important to the prisoner, and the regular administration of the criminal law, I deem it respectful to the Judge of the Superior Court, and otherwise proper to express the reasons which govern me.
Of the several reasons in arrest, the first relates to the constitution of the grand jury. To that, two objections are made, both of which are supposed to arise on *Laws 1779, c. 6, which provides that the County Courts shall nominate jurors for the Superior Courts, of whom a list shall be given to the sheriffs, who shall summon the persons and return the lists, and "that the Superior Courts shall direct the names (308) of all the jurors so returned, to be written on scrolls of paper, which shall be put into a box and drawn out by a child under ten years of age, and the first eighteen drawn shall be a grand jury." The first objection is, that it must appear expressly in the record, that all this was done, and that it does not so appear in this case; in which the record, after setting out the list returned or the venire facias, as it is called in the case, proceeds thus: "On balloting, the following jurors are duly elected, sworn and charged to serve as grand jurors, etc." *Page 252 
Upon the construction of this statute, the remark must be obvious, that it is not, at least in all its parts, to be taken as literal, and absolutely mandatory. The first eighteen drawn are not positively to be a grand jury; for some of them may not have been freeholders when nominated, or may not then be so, and freeholders are required by the first section. It means, that the first eighteen drawn, found upon trial to be otherwise qualified shall constitute that body. When therefore eighteen persons are stated to be duly elected out of a larger number, and to be thus elected by ballot, it cannot be understood otherwise, than that the body consisted of those whose names were on the scrolls first drawn, and who were found to be thus qualified. This signification we find given to those words "elect" and "ballot" in the law cases. But this act itself in the very next section applies this term ballot to the selecting of a petit jury by drawing the scrolls.
But if the record cannot be considered as affirming these facts, it may yet be sufficient. It is not necessary it should be affirmative of every part of the form or mode of proceeding. In the Superior Courts of original criminal jurisdiction everything as to the method of proceeding is presumed and taken to be right, unless the contrary appear. To this S. v. Kimbrough, 13 N.C. 431, following that of S. v. Lewis, 10 N.C. 410, is an authority in point. The words of the Chief Justice are, "when such a Court has taken an indictment, it shall be intended that it was duly taken; that it was taken by the requisite number of good and (309) lawful men, duly drawn, sworn, and charged — in other words, that everything was done correctly, as far as concerns manner and form." There the record stated, that "upon balloting the following persons are drawn to serve as grand jurors, viz.," etc., and that they returned the indictment; but it did not state any particulars of the balloting, nor that the jurors were sworn or acted on oath, otherwise than as to be inferred from the indictment itself. The conviction was sustained, and the prisoner executed. A single reflection will satisfy us, that this has always been acted on as law. It is the uniform tenor of all the records in reference to this point. I have never seen one, nor I presume has any other person, in which the writing of the scrolls, putting them in a box and drawing them out by a child, to the number of eighteen, were either in all or any of these particulars specifically stated, or otherwise set forth than in general terms similar to those here used.
I conceive therefore, that there is nothing in this objection. Nor would there be, I think, were the proceedings that of any *Page 253 
Court; because it comes too late, for the reasons more particularly applicable to the next point.
The second objection to the grand jury is, that in the record one Joel Jones is named as one of the grand jurors sworn, while the list returned contained no such person, but one of the name of Joes Jones. This differs from the former objection in this. That here the facts which it is alleged constitute the error do appear in the record; whereas the first error was supposed to consist in the silence of the record upon certain facts. It is insisted that the grand jury must be composed only of those summoned, and that, if one be empaneled on it by a different name from all those summoned, he must be taken to be a different person; and the bill is not well found.
This objection if founded in fact and taken in due season in the Superior Court would, in my opinion, have been unanswerable; and had it then been overruled, it would have been error. But this I am saying as a mere dictum; for admitting the exception to have been once sufficient, the question (310) remains whether the case was open to it when it was actually taken, which is the point of the present decision.
I do not find that it is yet settled in England, whether an exception to a grand juror can be taken after verdict or even after plea to the felony. Perhaps the unequivocal terms of St. 11 Hen. IV ch. 9, may make it imperative on the Court to receive it at any time; since if well founded, it avoids the indictment ab initio "with all the dependence thereof," which includes, as some suppose, the prisoner's plea in chief and "the verdict." Yet others have held, that although the proceedings be void under the statute, the matter of avoidance must be brought before the Court at a proper and at an early stage, namely before the bill found, by challenge, or by special plea upon arraignment, with a plea over to the felony either then or upon the overruling of the first plea. To that effect is the great authority of Lord Coke (3 Inst. 33, 34; and in Bacon's Abridgment, Juries A) this is said to be the better opinion. But Serjeant Hawkins afterwards remarks (Book 2, c. 25, secs. 23, 26, 27) that it seems yet doubtful, how far advantage can be taken of the disqualification of a grand juror after trial. Whatever may be the correctness of this doubt, it is manifest that it depends upon that Statute and has no other foundation.
There is nothing to ground it on, in this State. The Statute of Hen. IV is not in force here; because we have legislated for ourselves upon this subject, and have established by many acts a complete system of our own, inconsistent in many respects with that of England. I do not think it necessary to *Page 254 
recite our statutes, and content myself with a reference to them. They are Laws 1779, c. 137. 1806, c. 693, sec. 11, and c. 694, 1807, c. 712, and 1810, c. 801. A perusal of them must satisfy any mind, that all these statutes are directory in their nature. There is not an annulling clause or word in any one of them; and from many of the provisions it must be deduced, that no such consequences of an irregularity was intended. If we advert, for instance, to the very particular directions of (Laws (311) 1806, c. 694), relative to the forming of the jury lists from the tax list, to be furnished by the clerk of the county court; to the writing the names on scrolls of equal size; to the putting them in a box having a certain number of divisions, marks, locks and keys; to the locking the box, the custody of the keys and of the box; and to the drawing of the names by a child under a certain age; when I say, we advert to these provisions, and also recollect that many of the matters can by no method get into the record of the Superior Court, and that the statute contemplates that no part of them will get there, by communication from the county court, except the list of jurors to be summoned, that is, the result of all the previous ceremonies; the impression on the mind must amount to conviction, that the enactments are merely directory, and if so, that others upon the same subject in the same statute, or in another statute in pari materia, partake of the same character. But the prevailing consideration is the want of any words importing that the proceeding shall be void, if the directions of the acts be not strictly observed. Upon this ground,S. v. McEntire, 4 N.C. 267, was decided; and ruled, that in this State exceptions to grand jurors must be taken at a period analogous to that for excepting to a petit juror; that is, at the earliest point of time the party could. That to a petit juror must be by challenge when tendered; as has long been settled at common law, and was also here under the same act of '79 in S. v. Oldham,2 N.C. 450. In strictness, so ought a grand juror to be challenged before he is sworn. Thus it was at common law, and there our acts still leave the case. That was the course, I recollect, in Burr's trial;9 Mass. 10. Commonwealth v. Smith rules that, upon a statute of that State, similar to ours, no plea of an irregularity in empaneling the grand jury could be received. But it seems to be agreed in S. v. McEntire, supra, that the objection may be by plea upon the arraignment; and to that I would adhere, as a fair and convenient method. But I think all objections of the sort are precluded (312) by a plea to the felony.
We require the record to show that the inquisition was taken by a grand jury, perhaps, that it was a grand *Page 255 
jury of eighteen; and, in inferior courts, that it also show they were sworn. But when this appears, it is enough; and all matter of exceptiondehors, as to the mode of designating the jurors originally, or of forming the grand jury, and as to the disqualification of those on it, must be alleged by the prisoner before any step be taken, which presupposes that in fact, or that he admits the inquisition was well taken by competent persons. The present case will illustrate the correctness of this principle. The objection assumes as a fact, that the juror summoned, and the juror sworn are different persons. This may not be true, for the same person may be known by two names, and as well known by the one as the other. If the matter be pleaded, the State may aver and prove the identity; and the question would then be decided according to very fact. But by bringing it forward in this shape, proof is excluded, and the Court compelled to decide, perhaps against the truth, upon a mere presumption from the difference in name, that they are different persons. The application of the principle is not unusual in the criminal law. There is, according to the nature of the matter, a proper time for pleading different defences in criminal, as in civil cases. A plea in abatement for misnomer or a wrong addition must be put in upon arraignment; and that of autre foisacquit or convict, either before or with a plea over to the felony.
I am therefore of opinion that both of the objections taken in the first reason in arrest, are insufficient and must be overruled.
Entertaining this opinion, I have not attended to the authorities cited in support of the motion to amend by the originals in Wake Superior Court, or as modified here by the original jury list, in Wake County Court.
The second reason in arrest is, that the affidavit of the prisoner, on which the trial was removed, does not express the belief of the prisoner, that he could not obtain justice in Wake; and, by consequence, that the order of removal (313) is null and the Court of Cumberland had no jurisdiction. This professes to be founded on the particular terms of Laws 1808, c. 745.
I learn from Judge DANIEL, that he considers this a correct position, ifS. v. Twitty, 9 N.C. 248, be law; and that the ground upon which he overrules it is, that he denies that case. I do not feel called on to give any opinion upon that question, for I think this case may be decided correctly upon principles not at all inconsistent with that case. I agree with him, that the rule there laid down, turns in this particular instance, a *Page 256 
general jurisdiction into a very special one; and that it should seem indispensable, that there should be a plain and certain method for the Court, to which a cause is removed, to determine, whether it is bound to try it; that is, has the power to do so; about which if it stand on the force of the order, the minds of any two Judges may come to different conclusions of fact. I find too that in England such a jurisdiction has always been exercised by the King's Bench, and by statutes like ours, has been conferred on some other courts; and that the order of record is then conclusive; or, as Lord Mansfield expresses himself inRex v. Harris, 1 Bla. 378, the suggestion, once entered on the roll, is not traversable. As to the other case upon this subject that of S. v. Poll, 8 N.C. 442, I must say, that I think it law; and for the reasons given in it. That was a removal, by the consent of the master and counsel. It has not been determined, that the act of 1813 extends to indictments. But if it does, that act does not authorize or contemplate a removal by order of the Court, founded on the consent of parties. No decision of the Court whatever is necessary. "The parties may remove such suit by consent," and such "consent shall be entered on record," and thereupon the transcript is to be made out, and the Court to try the suit. In that case the consent to which the act gives effect, namely that of the party, was not entered of record; and that becomes the subject of judicial cognizance in Chowan for the first time. The question of jurisdiction was then open and necessarily to be decided by that (314) Court, for no other had passed on it. The want of it was manifest on the record; the cause remained in Washington. It was not removed, neither by order of the Court of Washington, nor by the prescribed acts of the parties. Whether the same rule applies when a court has decided on the point, and the cause has in fact been removed by an order, I admit I should have thought questionable, especially as a difference of opinion between the two courts might keep a case indefinitelyin transitu between them, and all cases, civil as well as criminal, are alike affected by the rule. But as a question, I leave it for farther consideration, until its decision be directly called for.
According to that case, we are to look into the affidavit to see whether the facts, on which the applicant founds his belief, are stated; but if we find any, we can go no farther; for the Judge to whom the application was made, and he alone decides on their sufficiency.
Here the facts stated are, a firmly seated feeling amongst the people of Wake, of the prisoner's guilt, and that he is so *Page 257 
advised, that is, informed by his counsel. Whether that information was a sufficient warrant for the conclusion drawn by him, that a fair trial could hardly be expected, or whether the affidavit was sufficient, without showing that improper efforts had been made by some person to excite that feeling, we cannot now inquire. But I am free to say, that I should have done as the Judge in Wake did.
The specific objection, however, here is, that the affidavit must state as a fact, his own belief, and that the statement of any other facts does not dispense with that.
I think the act of 1808, does not require that express averment. By the words, he is not to set forth his belief, but he is toset forth the facts, whereon the deponent grounds his belief. His belief real or pretended, is presupposed, as affirmed by himself in the motion. In the act of 1822, c. 1130, the phraseology is altered, so as to make it the duty of a person applying for a second removal, "to set forth particularly, and in detail, the grounds of suchapplication." This shows the sense in which the terms of Statute of 1808 are to be understood. (315)
But in reality, that act was passed for a very different purpose than that of obtaining a statement of the party's belief. It was, to make his belief of no consequence. It is in amendment of Laws 1806, c. 693, § 12, and is to be construed in reference to it. By the first act, a cause might be removed, "if it was suggested on oath, that there were probable grounds, that justice could not be obtained," in the first county. To me it would have seemed, that the Court was to judge whether the grounds were probable or not. But that was scrupled by some of the judges then in office; and there were decisions on the circuit, that a cause must be removed, if the party swore, in so many words, that there were probable grounds. This was making the party, the judge. To correct this, and restore the law to what it was originally meant to be, the act of 1808 was passed, requiring the facts to be set forth "so that the judge may decide upon such facts, whether the belief is well grounded." It will be seen then, that the removal is allowed, not upon the declaration of the applicant's belief, but upon its existence, as found by the Court upon reasonable grounds, independent of such declaration; which therefore becomes immaterial. My opinion is, that the affidavit comes up, in this respect, to the statutes.
If I thought otherwise, I should hesitate long before holding, that the prisoner could avail himself of it; since the order of removal was made at his instance. The common saying, *Page 258 
that consent will not confer jurisdiction, is true, when there is a total want of jurisdiction. But here there is a certain jurisdiction, lawful and well established. When it has been exercised at his request; when he sought a trial in Cumberland, because he could there get a fair one, and could not in Wake, and has had it accordingly, it does not lie with him, as it strikes me, to allege that the case did not exist, on which the jurisdiction attaches. It would be mischievous to allow the party an exception against his own motion; and the more so, because, as to removals for trial civil and criminal cases stand alike, upon the same words in the same acts. But in many criminal cases, (316) the consent of the accused justified the action of the Court, when nothing else would, as in withdrawing a juror. But I do not pursue this point further, because I think, upon the others, that the second reason must also be overruled.
The third reason is, that the order did not remove the cause to the Superior Court of Law for Cumberland.
The opinion of the Court is, that it need not, more expressly than it does. That the trial should be had by a jury of Cumberland, depended upon the order of the Court of Wake; but in what Court or place in that county, is not left to be ordered by the Judge, but is definitively fixed by the law. It could be nowhere else but in the Superior Court; and that Court is required by the statute to proceed in it. The act of 1808 uses the words "Superior Court of some adjacent county;" but all the others, 1806, 1813, 1821 and 1822, indifferently speak of adjacent or convenient "court" or "county." This shows, that the substance of the thing wished, and ordered, is the trial by a jury of another county; and every detail of time, place and court arises by consequence of law.
I do not perceive, from a perusal of the indictment, and of the record, any defect, to which the two remaining reasons in arrest, which are expressed in general terms, can apply; and having gone through the whole of them, I am obliged to say, I think the State entitled to judgment.
What that judgment must be, remains to be considered. In civil cases in which any final judgment can be rendered, this Court by the statute, gives, and here enters such an one, as upon inspection of the whole record, ought in law to be given; which, of course, is conclusive. But in criminal cases, the formal judgment, on which the convict suffers, is not entered here. The decision of the Supreme Court is to be certified to the Superior Court, which must proceed to give the judgment, according to the decision of the Supreme Court, and the law of *Page 259 
the land. The decision and certificate of this Court in a case where no judgment was given below, must therefore, under the act, direct the specific sentence which is (317) necessarily conclusive, cutting off all opportunity of reviewing the points now decided or raising others. The Court has, therefore, considered the question, properly now brought forward by the counsel, whether the prisoner is entitled to clergy.
We are of opinion, that he is not. This has not been questioned by anybody in England since Powlter's case, 11 Rep., 29, and both before and since, many persons have been executed there for arson, as it is known, that some have also suffered for it in this State. It is true, there is a difference of opinion between Lord Coke
on the one side, and Lord Hale and Mr. Justice Foster on the other, as to the surest method of answering the difficulty of that case. Lord Hale once agreed with Coke, but afterwards changed. In Mr. Foster's discourse, 330 et seq. he gives a synopsis of all the statutes, and sums up the argument. The difference seems to resolve itself into this: what is the effect of the Statute 4 and 5 Phil. M., c. 4. That statute takes away clergy from an accessory before the fact, to arson. It is silent as to the principal. LordHale and Mr. Foster say, it is a necessary consequence
of this enactment, that the principal is ousted of clergy; because he must be tried before the accessory, and upon the allowance of clergy to him, the accessory cannot even be arraigned. The question is, whether that consequence is as necessary as to make that statute in itself, an enactment, by construction to that effect. Lord Coke
thinks not. But he also thinks it evidence of the highest nature, that Parliament intended by the statute 5 and 6 Edw. VI, c. 10, (which is admitted on all hands, to be badly worded, and of doubtful construction) to revive in toto, and not partially, the statute 25 Hen. VIII, 3, by which arson is expressly ousted of clergy. Which of the distinguished parties to this controversy is right, is a question on which each person will from his own opinion, though it may be deemed presumptuous to express it. Yet I acknowledge, for myself, that I cannot upon any grounds of incongruity or inefficiency, (318) construe a statute which affixes the punishment of death to one crime, so as to say, that thereby it affixes that punishment to another and distinct crime, not mentioned in it. Yet if the offense thus expressly ousted, be in its nature dependent, it is natural to expect that the principal offense should likewise be ousted. Hence, when statute 25 Hen. VIII, was repealed by statute 1 Ed. VII, c. 12, and re-enacted by 5 and 6 Ed. VI, in such terms as to leave it a problem, whether it was revived in *Page 260 
part or in the whole; and then the statute 4 and 5 Phil. and M., passed, it might well be held to remove the doubt upon the other statutes. It could not proprio vigore oust the principal; but it showed that parliament considered that had already been done. As furnishing a rule of construction, the Court used it in Powlter's case. It was giving a sense to words before dubious, by the body whose words they were; and that interpretation Lord Coke says the Court felt itself bound to hold to be "a good interpretation." But it is needless to pursue the inquiry, which is rather curious than useful. For Lord Hale and Mr. Foster agree, that in arson the principal is ousted of clergy; and that Powlter's case is founded in sound sense and upon legal principles, though not upon those the reporter has chosen to found it on.
The decision of the Court, therefore, is, that there must be judgment of death against the prisoner, without benefit of clergy; which must be certified accordingly.