MOORE v. NAVASSA GUANO COMPANY.

(Filed April 29, 1902.)

1. FINDINGS OF COURT—*Affidavits—Appeal.*

Where the trial judge sends up with his findings of fact affidavits, such affidavits will be taken as a part of the findings of the court.

2. JURY—*Array—Challenge—Verdict.*

A failure to sustain a proper challenge to the array renders the verdict void.

3. JURY—*Drawing—County Commissioners—Panel—The Code, Sec. 1727.*

Section 1727 of The Code, requiring persons named on the scrolls drawn from the jury box to constitute the jury is mandatory.

ACTION by Francis M. Moore against the Navassa Guano Company, heard by Judge *Thos. A. McNeill* and a jury, at September Term, 1901, of the Superior Court of BRUNSWICK County. From a judgment for the plaintiff, the defendant appealed.

*Meares & Ruark,* and *Bellamy & Peschau,* for the plaintiff.
*Russell & Gore,* and *Rountree & Carr,* for the defendant.

FURCHES, C. J. The Court being of opinion that the defendant's challenge to the array (which is defendant's first assignment of error) should be sustained, no other exception will be considered.

The defendant's challenge and motion to dismiss the panel

is based on two affidavits—one by C. E. Taylor, Register of
Deeds and Clerk of the Board of County Commissioners, and
the affidavit of T. L. Vines.    The Judge finds but one fact:
"That the Commissioners in drawing the jury, and in acting
as set out in the affidavits, did not have any corrupt intent,
and counsel for defendant in arguing on the challenge,
stated that they did not charge any corrupt intent."    But
the Court in this finding refers to the affidavits, *"in acting
as set out in the affidavits,"* and transmits them to this Court
as a part of the record on appeal.    They are not contradicted,
and therefore must be taken as true and as a part of the find-
ings of the Court.

We then have the findings of the Court in substance to be:
That the County Commissioners of Brunswick County, in
August, 1901, met and proceeded to draw the jury, now ob-
jected to by the defendant; that the Register of Deeds, who
was Clerk of the Board, and the Sheriff of the County, and a
boy under ten years old, and T. L. Vines were present.    The
drawing then proceeded—the boy drawing the scrolls from
No. 1 of the jury box, and handing them to the chairman.
The names were then discussed, as to whether they should be
jurors or not, and as many as ten or more of the names so
drawn were rejected and returned to box No. 1.

The affidavit of Taylor states that the object seemed to be
to distribute the jurors to the different townships, and not
to have them too near those already drawn.    The affidavit of
Vines states "that said S. J. Stanly, Commissioner, objected
to a number of names in Shallotte Township, which were
drawn from the box, and said names were discarded and re-
turned to box No. 1, and Sheriff Walker objected to several
from Town Creek Township; when the name of Monroe
Hickman was drawn, some one said he is right there among
the rest, meaning that he was from the same community or
neighborhood as others whose names had been drawn, and

Commissioner Stanly replied, 'I want him,' and his name was placed on the list; that Stanly's own son was selected because he (S. J. Stanly) said he wanted to come to Southport so bad we had better take him." These are to be taken as the facts connected with drawing the jury, and that there was no "corrupt intent."

A challenge to the array is a challenge to the entire panel summoned and returned by the Sheriff as jurors, and, if allowed, the entire jury or panel is discharged; if not allowed when it should have been, it vitiates and renders void the trial by a jury selected from this improper array. This objection to either the panel or challenge to the array "can only be taken (sustained) when there is partiality or *misconduct* in the Sheriff, or some irregularity in making out the lists." *State v. Speaks,* 94 N. C., 865. Section 1727 of The Code provides for drawing juries, and is as follows: "At least 20 days before the regular fall and spring terms of the Superior Court in each year, the Commissioners shall cause to be drawn from the jury-box, out of the partition marked number one, by a child not more than ten years of age, thirty-six scrolls, and the persons whose names are inscribed on said scrolls shall serve as jurors at the fall and spring terms of the Superior Court to be held for the county respectively ensuing such drawing, *and the scrolls so drawn to make the jury shall be put into the partition marked No. 2.*" It can not be contended, and was not contended, that there were not manifest *irregularities* in drawing this jury, and, under the rule stated in *State v. Speaks,* the defendant's motion should have been sustained and the panel discharged.

But the plaintiff says this statute is only directory—not mandatory—and this being so, the Court should not have sustained the defendant's challenge to the array, and cites *State v. Haywood,* 73 N. C., 437; *State v. Martin,* 82 N. C., 673; *State v. Hensley,* 94 N. C., 1021; *State v. Stanton,* 118 N.

C., 1182; *State v. Smarr,* 121 N. C., 669; *State v. Fertilizer Co.,* 111 N. C., 658; *State v. Perry,* 122 N. C., 1018. We have examined these cases, and several of them state that this statute is directory, and irregularities of the Commissioners in drawing the jury will not sustain a challenge to the array. The case of *State v. Haywood,* first cited by plaintiff, is decided upon the ground that the motion was not made in time; and while it speaks of Section 229 of The Code of Civil Procedure not being mandatory, it seems to put this upon the terms of that section, which is said to expressly provide that irregularities in drawing the jury shall not vitiate the jury. And to leave no doubt as to this, he quotes the statute as follows: "In all cases where the County Commissioners of any county may have revised the jury lists or corrected the same, or drawn a jury at a time or in a manner different in form from that prescribed by law, shall be valid as if drawn at the proper time and in the proper manner: *Provided,* said action has been in all other respects conformable to law. This proviso does not cover our case. If a person not on the jury list should be summoned, or one not qualified as a juror, such irregularity 'could not be conformable to law,' and would fall within the provision, and, if objected to in apt time, would probably be fatal to the indictment found." It clearly appears that what the learned Judge said, as to irregularity not vitiating, is put upon the provisions of the statute at that time, which seems to have been omitted in The Code of 1883. And it is said in that opinion that such irregularities, as were included in the proviso, would not be "conformable to law," and would vitiate the jury.

The statute in force when the opinion in *State v. Haywood* was written, seems to have been still in force when the opinion in *State v. Martin,* 82 N. C., 673, was written; and it is probable that that statute and the opinion of the Court in *State v. Haywood* influenced the Court, in that case, to say

what it did as to the statute being directory—as it was not necessary to the decision of the case to have discussed the statute, and this is shown in the opinion. This case (*State v. Martin*) is the strongest case in support of the plaintiff's contention of any of the cases cited. But this case goes a bow-shot beyond that case. It is true that the statement of facts in that case shows that the Commissioners undertook to equalize the jurors in the different parts of the county. This we do not approve, and think the Commissioners in that case exceeded their legal authority, and if the case had depended upon that fact, the motion should have been allowed.

But in this case, while the Commissioners professed to do what they did for the purpose of distributing the jury over the county, they violated this rule which they had officiously adopted, and took two jurors from the same locality, from which they had rejected other jurors who had been previously drawn. S. J. Stanly, who was one of the Commissioners, objected to a number of names, drawn by the boy, who lived in Shallotte Township, and the scrolls containing their names were put back into box No. 1, and Sheriff Walker objected to several names from Town Creek Township. When the name of Monroe Hickman was drawn, some one said: "He is right there among the rest"—that is, others who had been drawn and rejected—when Commissioner Stanly said, "I want him," and his name was listed as one of the jurors. Stanly's son was selected and taken because Stanly said "He wants to come to Southport so bad we had better take him."

In every case cited for the plaintiff in which the Court had refused the motion to discharge the jury on account of irregularities on the part of the Commissioners in drawing the jury, the action of the Commissioners has been severely criticised and condemned. But this has done no good, and, instead of their improving, they have grown from bad to worse, until, in this case, they have in effect done away with

the ten-year-old boy and selected the jury themselves, allowing the Sheriff to put in his objections. *Cui bono* to have a boy under ten, if the names he draws are to be rejected, or sorted from by the Commissioners?

The plaintiff says that the Court has found that there was no corrupt intent on the part of the Commissioners; and that being so, the motion of the defendant was properly refused. It is true that in all the cases cited where a challenge to the array was made on the ground of irregularity and refused, the Court has said there did not appear to have been any corrupt intent. But this does not show that the motion should not be allowed unless there is a corrupt intent found, as we can not think that any Court would refuse such a motion where a corrupt intent was found to exist on the part of the Commissioners in manipulating the drawing of the jury. This is shown by what is said in *State v. Haywood,* where the Court says that if one was summoned who was not on the jury list, or one not qualified as a juror, such irregularity would not be "conformable to law," and would probably vitiate their action. And yet this might be done without any corrupt intent. In the case of *Boyer v. Teague,* 106 N. C., 576, the plaintiff challenged the array, and the Judge sustained the motion and discharged the panel. In doing this, BROWN, Judge, found the facts upon which he acted; and upon the facts found it appeared that the defendant, Teague, was Sheriff of the county, and the Commissioners were in regular session, when Teague entered the Commissioners' room with the jury-box and a boy under ten years of age, when the Commissioners proceeded to draw the jury—the boy drawing the scrolls one by one from box No. 1, handing them to the Sheriff and he read out the names, and the Commissioners wrote them down. This was so, with the exception of a few of the names drawn, when the Sheriff could not read them, and handed them to some of the Commissioners to read. They had been

drawing the jury out of box No. 1 for some years without its becoming exhausted, Forsyth being a large county. A short time before this a part of Davidson County had been added to Forsyth and erected into Clemmonsville Township, and the names of jurors from that new territory and township had been put in box No. 1; and the result was that in drawing the jury a large number of them were from that township. The plaintiff, Boyer, had been Sheriff of Forsyth County for four years preceding the defendant, and he used to be present generally with the Commissioners when the jury was drawn, and sometimes read out the names on the scrolls and sometimes the Commissioners read them, but plaintiff stated that he then had no suit in Court or case on docket; and the Court stated in sustaining the plaintiff's challenge to the array, that he did not find any actual intentional fraud, but that it was very irregular and gross negligence for the Commissioners to allow the defendant, Teague, to participate in the way he did—that is, to allow Teague to read the scrolls and put them in box No. 2, without examining the scrolls to see if they had been correctly read. And this Court, in considering the case on appeal, said his Honor did not proceed upon the idea that there was fraud, but that there might have been. We only cite the case to show that this Court has sustained a challenge to the array where there had been no fraud shown, and where the Judge, in sustaining the challenge to the array, stated that he had found none, but found "gross negligence and irregularity in the action of the Commissioners."

So it appears to us, after a careful examination of the authorities, that so far as the action of the Commissioners, as to time and place of drawing the jury or revising the jury list is concerned, the statute is considered directory; and while it is their duty to do these things at the time and place the law directs them to be done, still, if they are not done when and where they should be, but are *properly done* at another

time and place, they will be treated as irregularities. This is because the law directs the Commissioners to perform these duties and to prevent delay in the administration of justice such acts are held to be directory, and where no injustice appears to have been done by such irregularity, the Court will, it seems, not make such irregularity a cause for discharging the panel. But where they *assume to do things that they have no right nor authority to do*, whether at the time appointed by law or at any other time, such acts will not be held to be an irregularity, but officious, unauthorized acts on their part, and will, if properly objected to, vitiate the panel so drawn. *It was no part of the duty of the Commissioners to draw the scrolls from the box.* In fact, the law did not allow them to do this, as it provides that it should be done by a person under ten years of age. But had they not as well draw the scrolls from the box as to pass upon and reject such as they saw proper to reject after they were drawn? Indeed, it was worse than if they had drawn them. It was a selection by them of such jurors as they wanted. When a juror was drawn from a locality that they had decided was getting too many jurors, and a proposition was made to discard him on that account, one of the Commissioners said, "I want him," and his name was put on the list. And when a son of one of the Commissioners was drawn and taken, "because he wanted to come to Southport so bad." Even the Sheriff of the county was allowed to make such objections as he thought proper. These acts go far beyond what can be termed irregularities, further than any reported case goes—further than *State v. Martin*, further than *Boyer v. Teague.*

In *Boyer v. Teague* the jury seems to have been regularly drawn in every respect except that the defendant, who was Sheriff and had a suit pending involving his office, was allowed by the Commissioners to read the scrolls drawn by the boy, and put them in box No. 2 without the Commissioners

reading them.   The Court found that this was "gross negligence" on the part of the Commissioners, for which he sustained plaintiff's challenge to the array and discharged the panel.   If that was sufficient cause, and the action of the Judge below was sustained by this Court, should not the motion have been sustained in this case?   Is not this a much stronger case for the defendant than *Boyer v. Teague?*   This kind of business on the part of Commissioners must stop somewhere.

The motion of defendant should have been allowed, and the panel discharged.

Error.