STATE v. DIXON.

(Filed December 16, 1902.)

1. JURY—*Jury List —Purging —Abatement —Quashal —Pleas—The Code, Secs. 1722, 1728.*

The merely purging the jury list of the names of those who had not paid their taxes, without adding any new names thereto, does not vitiate the venire in the absence of bad faith or corruption on the part of the county commissioners.

2. EVIDENCE — *Contradictory Witness —Witnesses —Coroner —Inquest—Homicide.*

The statements made by a witness at the inquest by a coroner, though the inquest was not legal, are competent to contradict such witness in a trial for the murder.

3. DYING DECLARATIONS—*Evidence—Statements—Homicide.*

The statements by a person in his dying hours, after he had stated that he was dying and had asked for prayers, as to how he was shot and who shot him, are competent as dying declarations.

4. EVIDENCE—*Circumstantial Evidence—Homicide.*

In an indictment for murder, it is competent to show that gun wadding found at the place of the shooting contained a part of the same matter as the pages of a magazine, a copy of which magazine was found at the house of the accused with those two pages torn out.

5. EVIDENCE—*Motion—Homicide.*

In an indictment for murder, evidence tending to show improper intimacy between the accused and the wife of the deceased, is competent.

6. EVIDENCE—*Harmless Error—Homicide.*

The evidence that a gun found in the possession of the accused, after the shooting, had belonged to a witness, and had been lost two years before the shooting, when accused worked for the witness, if error, is harmless.

STATE *v.* DIXON.

7. FINDINGS OF COURT—*Assignment of Error—Appeal.*

The recital of facts in an assignment of error can not be considered unless such facts are found by the judge and set out in the case on appeal.

8. EVIDENCE—*View—Homicide—Trial.*

The fact that the jury had in full view the gun with which the killing was alleged to have been done, and the court docket, in the absence of a finding by the trial judge that the accused was prejudiced thereby, is not error.

9. HOMICIDE—*Murder—Evidence—Instructions—Verdict.*

Where all the evidence tends to show a killing by shooting from ambush, and there is nothing to contradict this, it is proper to instruct the jury to find the accused guilty of murder in the first degree or not guilty.

10. APPEAL—*Escape—Trial—Practice—Homicide.*

In a capital case, where the accused escapes, the court may, in its discretion, either dismiss, determine or continue the appeal.

INDICTMENT against Cyrus Dixon, heard by Judge *F. D. Winston* and a jury at Spring Term, 1902, of the Superior Court of JONES County. From a verdict of guilty of murder in the first degree and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *A. D. Ward,* for the State.

*Thos. B. Womack,* for the defendant.

CLARK, J. The prisoner was convicted of murder in the first degree of Godfrey Webber. The appeal was most fully argued here, and every exception which counsel thought might avail the prisoner was taken below, as fifty exceptions appear in the record—though on fuller consideration these were reduced, as was proper to thirteen errors assigned in the case on appeal. After careful consideration, we have

been able to find nothing prejudicial to the rights of the prisoner and must affirm the judgment.

It would serve no good purpose to go over, one by one, each assignment of error, and discuss them in a lengthy opinion, since opinions are for guidance in other cases, and there is little presented by the exceptions which has not already been decided, or the discussion of which would be of service in any other case. We have, none the less, carefully considered and passed upon each error assigned in the record. Among the errors assigned, those, perhaps, most earnestly pressed were:

The plea in abatement and motion to quash on the ground that the County Commissioners, in June, 1901, added no new names to the jury list, and merely purged the box by taking out the names of those who had not paid their taxes, was properly overruled. It has been too often decided to be questioned that "the regulations contained in sections 1722 and 1728 of The Code, relative to the revision of the jury list, are directory only, and, while they should be observed, the failure to do so does not vitiate the *renire* in the absence of bad faith or corruption on the part of the County Commissioners." *State v. Perry,* 122 N. C., at page 1021, and numerous cases there cited. Those cases are not overruled in *Moore v. Guano Co.,* 130 N. C., 229, which merely holds that the conduct of the County Commissioners in that case went beyond mere irregularity, and was as to a matter so serious in its nature as to invalidate the panel drawn in such manner.

To contradict the testimony of witnesses for the defence, the Court allowed evidence of their statements made (some of them in writing) under oath at the Coroner's inquest. The prisoner excepted on the ground that the Coroner was not legally authorized to hold such inquest. That was immaterial. Contradictory statements, no matter when or where made, were competent.

The deceased was shot about 7 p. m., 22 November, 1901, by some one lying in ambush along the road. In his dying hours—he died that night after being carried home—after stating that he was dying and asking for prayers, he stated he was first shot from behind, and when he fell the man rushed out and shot him while lying on the ground on his back (which was corroborated by the physician's testimony as to the range of the shot), and said that his assailant was a small white man and that he looked like Cyrus Dixon, and, when he ran off, that he ran like him. This testimony was competent as dying declarations. There was evidence of the tracks of a man running from the place to a branch which led up back of Dixon's house, that the tracks were measured and an impression taken by cutting paper to fit in the track, and this pattern corresponded with the prisoner's shoes. It was further in evidence that the gun wadding picked up, at the place of the killing, between the stump from behind which the shooting was done and where the deceased fell, was part of pages 361 and 362 of "The Delineator" magazine, and that at Dixon's house the magazine was found with those pages torn out. Another copy of "The Delineator" of the same date was produced, and the matter on pages 361 and 362 contained the same matter as was on the wadding thus picked up. The prisoner objected because the genuineness of the last copy was not proved by the publishers. We can not sustain the objection; the whole was a circumstance properly left to the consideration of the jury.

There was evidence tending to show improper intimacy between the prisoner (who was twenty-one years of age) and the wife of the deceased, who was twenty, while the deceased was older; that on one occasion the prisoner had sought to hire a horse and buggy to take "his gal" to church; that when questioned as to who she was, he had replied, pointing to the deceased, she is "that old man's wife," and when cautioned,

had said that she was "already his"; that he had carried her in a buggy to a camp meeting and there had introduced her as a "Miss Lina Hall from the Banks"; that he had said the deceased had told him to let his wife alone, and had threatened him, but he said "Damned, if powder and shot are not cheap for me as for old man Webber"; that he had refused to take service where Webber was employed, "because," as he said, "there was an unpleasantness between them"; that on one occasion he and Webber's wife had gone into the woods "to get tooth brushes," accompanied by a negro woman, and had sent the negro woman back; that the afternoon just before the slaying he had bought some new caps for his gun, and that when his gun was examined, soon after the killing, it had new caps and bore signs of having been recently fired. These and many other circumstances went to the jury, together with such evidence as the prisoner offered in rebuttal or contradiction.    One witness testified that the gun found in the prisoner's possession had been his two years before, but had been lost, he knew not how, and that at the time of its disappearance the prisoner was working at his place. The prisoner contended that this tended to charge him with larceny, and was prejudicial.    It did not tend to show larceny, this possession after the lapse of two years, and while its relevancy is not very apparent, its admission was not reversible error.    Even if it had been charged (which was not), and even had been shown that the prisoner stole the gun, the jury could not have therefrom concluded that, beyond a reasonable doubt, the prisoner waylaid and slew the deceased. The facts of this case, in many particulars, resemble those in *State v. Outerbridge,* 82 N. C., 617.

The prisoner assigns as error that the jury, during their deliberations, had the gun and the Court docket in full view. The recital of facts in an assignment of error can not be considered by the Court, unless such facts are found by the

Judge and set out in the case on appeal. *Patterson v. Mills,* 121 N. C., at page 269; *Merrell v. Whitmire,* 110 N. C., 367; *Walker v. Scott,* 106 N. C., 56. But even if the above had been so found and set out, we do not see that they could prejudice the result. It is not enough that there was opportunity, but the Court must find that in fact the jury were prejudiced by such matters. *State v. Tilghman,* 33 N. C., 513.

The Judge properly told the jury that they should return a verdict of murder in the first degree or not guilty. All the evidence tended to show a killing by shooting from ambush, and there was nothing to contradict this, and the sole question, if the evidence was believed, was simply whether the prisoner was, beyond all reasonable doubt, the slayer. *State v. Rose,* 129 N. C., 575. We find no error in the Judge's charge in any of the matters excepted to.

It has been stated to us by the Attorney-General that he has been informed that the prisoner has escaped jail since the argument. We are not advised whether the report has been verified, nor do we know whether the prisoner has been retaken or not. If the reported escape is not true, the report is immaterial; if it is true, it is not ground for any favor. In a capital case, even when the escape is before argument here, "the Court may, in its discretion, either dismiss the appeal or hear and determine the assignments of error, or continue the case." *State v. Cody,* 119 N. C., 908; 56 Am. St. Rep., 692; *State v. Anderson,* 111 N. C., 689, and *State v. Jacobs,* 107 N. C., 772; 22 Am. St. Rep., 912, in two of which cases the appeal was dismissed. One who thus dismisses himself abandons his appeal, and has no ground to invoke a review of the trial by the appellate Court. Certainly, when the escape is after argument here, the Court should dispose of the appeal unless it prefers to dismiss and leave the judgment below in force.

Affirmed.