STATE v. E. F. MALLARD.

(Filed 25 October, 1922.)

**Indictment — Motion to Quash—Jurors—Selection—Qualification—Statutes, Directory—Grand Jury.**

The board of county commissioners, in drawing the names for the grand jury, placed the scrolls with the names of the qualified jurors separately in envelopes, as to each precinct, with the name of the precinct marked on each envelope, and proceeded to draw the jurors apportioned to each precinct from the scrolls of names of the jurors therefrom, placed in box No. 1, and drawn by a child under ten years of age, with the purpose and effect of thus drawing from each and every of the precincts of the county its proportionate number of qualified jurors. In other respects the directions of the statute, C. S., 2212, 2213, 2214, were complied with, and this having been done in good faith, and without the opportunity for fraud: *Held,* these statutes being directory upon the matter excepted to, except as to the qualification required of jurors, the irregularity complained of did not invalidate the indictment of the defendant in this case, and his motion to quash it for irregularity was properly denied. The importance of conforming to the directory provisions of these statutes emphasized by WALKER, J.

APPEAL by defendant from *Cranmer, J.,* at April Term, 1922, of BRUNSWICK.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*McLean, Varser, McLean & Stacy, associate counsel for State.*
*Rountree & Carr and John D. Bellamy & Son for defendant.*

WALKER, J. The defendant was indicted in the court below for willfully, fraudulently, and corruptly embezzling and converting to his own use certain money, checks, notes, bonds, mortgages, and other valuable papers and securities, to the amount of $107,000, belonging to the Citizens Bank of Shallotte, in Brunswick County.

The defendant was convicted of the embezzlement at the April Term, 1922, of Brunswick County Superior Court, and from the sentence of five years in the State's Prison appealed to this Court. There is only one point presented in the appeal. The defendant at the proper time, before pleading to the bill of indictment, entered a plea in abatement on the ground that the bill of indictment was found by an illegally constituted grand jury. It seems from the evidence that in Brunswick County, certainly since 1906, the jurors of the various Superior Courts have been chosen in the following way: At the time for the revision of the jury list, at the proper biennial period, the board of commissioners revised the same in the manner provided by the statute, C. S., 2312. They also caused the names of the jury list to be copied on small scrolls of paper of equal size and put in a box procured for that purpose, having two divisions, marked Nos. 1 and 2. Instead, however, of putting all these scrolls loosely and indiscriminately in box No. 1, they divided the same according to the residence of the taxpayers in the townships of the county. The scrolls of residents of a particular township were enclosed in a large envelope, which was sealed. In this way the names of all jurors belonging to a particular township were placed in an envelope marked with the township's name, and then the envelopes were placed in box No. 1. When the time came on to draw jurors for a term of the Superior Court, the board of county commissioners, having assigned to each township, according to its population, a proper and just proportion of the jurors so to be drawn, took from box No. 1 the envelopes containing the scrolls of the taxpayers for a particular township, emptied the same in a hat and had a child, under ten years of age, to draw from it the number of jurors assigned to that township. They continued this process, thus distributing the jurors throughout the whole county in proportion to the population of the various townships. The names not drawn, but left in each envelope, were again enclosed in that envelope and returned to box No. 1, while the names of the jurors drawn were

put in box No. 2, in accordance with the statute. This had been the custom, as above stated, in Brunswick County for many years, and there was no corruption or bad faith in thus drawing the jury, but it was all done with a good motive, if not the best of motives, the purpose being to distribute the jurors equally among the several townships or portions of the county. The grand jury in question, which found the bill, was drawn by a child under ten years of age from a hat, as above described.

It seems to have been quite definitely decided by the court, in several cases, that the irregular action of the board of county commissioners, where there is no fraud or corruption, and no opportunity for fraud, on the part of the person interested, in drawing a jury not in strict accordance with the statute, does not invalidate the array.

In *S. v. Martin*, 82 N. C., 672, the commissioners refused to put on the list of jurors names which were drawn because they thought too many were drawn from one section of the county, and, wishing to equalize the number among the different townships, they were put back in the box and others drawn in their stead. More was done, and of a more serious character, than was done here. The Court refused to allow the challenge of defendant's counsel to the array in that case. It appears to us that what the commissioners did in *S. v. Martin, supra,* departed further from the letter of the law and its substance or spirit than what was done by the commissioners of Brunswick in this particular case. There the commissioners, after drawing the scrolls, and knowing the names thereon, refused to put them on the jury list of their own accord. Here, however, the names already separated, or segregated, according to townships, were drawn by a child under ten years of age from a hat after they had been mixed up indiscriminately, and only that number drawn and put on the list to which the township, as the commissioners verily believed, was entitled according to its proportion of population. There could, therefore, be no opportunity or chance for fraud. The general effect of the act of the commissioners was to distribute the jurors to each of the townships throughout the county.

In *Moore v. Guano Co.*, 130 N. C., 229, Stanley, one of the commissioners, objected to a number of names in Shallotte Township, and those names were discarded and returned to box No. 1. Sheriff Walker also objected to several from Town Creek Township. When the name of Monroe Hickman was drawn, some one said, "He is right there among the rest," meaning that he was drawn from the same community, or neighborhood, as others whose names had been drawn. Commissioner Stanley, however, replied, "I want him," and his name was placed on the list. Stanley's own son was selected, he, the father, having stated that his son was so anxious to come to Southport that he had better be taken. The challenge to the array was allowed in that case.

In *Boyer v. Teague,* 106 N. C., 576, the defendant Teague was sheriff of the county and a party to the particular action. There was no actual or intentional fraud, but the challenge to the array was allowed because the commissioners permitted Teague to participate in the drawing. In each of these cases, though, there was no actual fraud established by proof, yet the action of the commissioners was such as to open the door to fraud, and for that reason the challenge to the array was allowed, and properly so, as the personnel of the jury was made to depend, to some extent, at least, upon the will, or conduct, of an interested party.

*S. v. Perry (Hatton),* 122 N. C., 1018, was to this effect: "It has always been held that the regulations in The Code, secs. 1722 and 1728 (now C. S., 2312 to 2319, inclusive) are directory only to the board of county commissioners, and while they should be observed, the failure to do so did not vitiate the venire in the absence of bad faith or corruption on the part of the county commissioners." All of the previous cases seem to have been cited in that case.

In *S. v. Dixon,* 131 N. C., 808, it appears that, at the time of the revision of the tax list in June, 1901, the commissioners added no new names to the jury list, but had purged the box by taking out the names of those who had not paid their taxes. This, though an irregularity, was held by the court not to be sufficient ground for challenge to the array, citing *S. v. Perry, supra,* and other decisions, and then proceeded: "These cases are not overruled in *Moore v. Guano Co.,* 130 N. C., 229, which merely holds that the conduct of the county commissioners in that case went beyond mere irregularity, and involved a matter so serious in its nature as to invalidate the panel drawn in such a manner."

In *S. v. Daniels,* 134 N. C., 641, the Court again reaffirms the principles set forth in the older cases. There the county commissioners failed to make the prepayment of taxes a qualification for persons on the jury list. Again the Court in that case distinguishes *Moore v. Guano Co., supra.*

In *S. v. Teachey,* 138 N. C., 587, the board of commissioners revised the jury list at a time not fixed by the statute, and included in it names of persons otherwise qualified, but which did not appear upon the tax list. It was held that this was a sound objection to the panel.

In *S. v. Banner,* 149 N. C., at p. 521, the objection was that three years had elapsed without a revision of the jury list by the board of commissioners. It was held that this did not avoid the panel. There was a challenge to the array in *Lanier v. Greenville,* 174 N. C., 311, and the challenge was overruled, though the irregularities in that case were apparently much greater than they are in this. The subject is referred to again in *S. v. Wood,* 175 N. C., 819.

STATE v. MALLARD.

It is admitted by the State in this case that the defendant is entitled to have the bill of indictment found by a grand jury, the individual members of which are legally qualified to act as grand jurors. *S. v. Baldwin,* 80 N. C., 390; *S. v. Smith, ibid.,* 410; *S. v. Watson,* 86 N. C., 624; *S. v. Sharp,* 110 N. C., 604; *S. v. Paramore,* 146 N. C., 604. In this instance, however, there is not the slightest attack upon the competency of any individual upon the grand jury to serve as a grand juror. It is admitted, and so found by the court, that there was no fraud or collusion in the selection of this particular grand jury. There was a mere irregularity, which in itself was intended to promote justice and to prevent fraud and collusion. In every case cited above, from *S. v. Seaborn,* 15 N. C., 305, to *S. v. Perry, supra,* such irregularities have been held not a ground of challenge to the array, the statute being directory in those matters not concerning the essence of the jury's constitution.

The State has requested us, in a supplemental brief, to still further consider and review the authorities upon this important question, and we will now proceed to do so, at the risk, perhaps, of slight repetition, but the case is of sufficient moment to justify it, and especially so as there have been expressions used in some of the cases heretofore decided which seem to be misleading and are apt to produce confusion.

The court found the following facts:

1. That there was no corruption nor bad faith in drawing the jury.

2. That the jury list was revised each two years, as required by statute.

3. That the grand jury which found the bill was drawn by a child under ten years of age, and from the jury list so constituted and as contained in the several envelopes.

4. That the jury was apparently drawn from the several townships proportioned according to population, as disclosed by the evidence and cross-examination of John Jenrette, chairman of the board of commissioners.

C. S., 2212, provides, as to the manner for the selection of those from whom the jurors shall be drawn, that three qualifications shall be necessary: (1) taxpaying citizens; (2) those of good moral character; (3) persons of sufficient intelligence. All of these qualifications existed in this case, according to the testimony of the witness Jenrett and the findings of fact.

Section 2313 provides as follows: "The commissioners at their regular meeting on the first Monday in July in the year nineteen hundred and five, and every two years thereafter, shall cause the names of their jury list to be copied on small scrolls of paper of equal size and put into

a box procured for that purpose, which must have two divisions marked No. 1 and No. 2, respectively, and two locks, the key of one to be kept by the sheriff of the county, and the other by the chairman of the board of commissioners, and the box by the clerk of the board.

In the present instance two boxes, marked No. 1 and No. 2, were used, and there was a proper observance of the statute with reference to these boxes. The statute does not, in terms, prevent or prohibit the name of the township from being written on the slip containing the name of the juror, and this is the practice in most counties for the evident purpose of showing the residence to the process officer in summoning the jury. In this case, the only variation from the custom was that all the names from a particular township were put in one envelope and the township name written on the outside of the envelope. It is admitted, as well as found by the court, that all of this was done in good faith, and was without corruption or bad motive.

The State contends that there is nothing in section 2314 which prohibits this method or requires the drawing of the jury to be done otherwise. That this section, in other respects, was scrupulously complied with, and the jury drawn out of box marked No. 1, and in addition to the regulations of the statute, the commissioners added the precaution of drawing the jury from the townships proportionately. That even if this case presented a violation of the provisions of the statute with reference to drawing the jury, which are merely directory, and such violation was done in good faith, no reversible error could be declared. That there is no material violation of the statute in the present case, but even if there was, it could not invalidate the venire in the absence of bad faith or corruption. These are some of the contentions of the State.

The Court, in *S. v. Banner,* 149 N. C., 519, when passing upon a similar motion in a capital case, used this language: "Besides the regulations contained in sections 1722-1728 of The Code (then Rev., secs. 1957-1960, now C. S., secs. 2312-2314), relative to the revision of the jury list, are directory only, and while they should be observed, the failure to do so does not vitiate the venire, in the absence of bad faith or corruption on the part of the county commissioners. *S. v. Dixon,* 131 N. C., 810; *S. v. Perry,* 122 N. C., 1021; *S. v. Daniels,* 134 N. C., 641. *S. v. Teachey,* 138 N. C., 591, cited by the defendant, holds that the jury list may be revised at dates other than those specified in the statute, and if properly done at such times, the list will be sustained. The Court, in the *Teachey case, supra,* quotes from the opinion of *Justice Connor,* in *S. v. Daniels,* 134 N. C., 648, as follows: "It has been held from the earliest period of our judicial history that the provisions of these statutes are directory and not mandatory."

In the case of *Moore v. Guano Co.,* 130 N. C., 229, cited by the defendant, the Court was of the opinion that the method of allowing commissioners to throw out such names as were drawn by the child under ten years, in any given community, and put in the son of one of the commissioners and to take another juror, because one of the commissioners said, "I want him," and such other unseemly and unwarranted rejection of those drawn, was not evidence of good faith, but was essentially and morally wrong. And, therefore, the State contends that *Moore v. Guano Co., supra,* cannot be a controlling authority in this case.

In *S. v. Hensley,* 94 N. C., 1021, the Court held that the regulation with reference to revising and correcting the jury list, and placing the names in the box and not keeping the boxes locked and safely protected, were highly important, but only directory and not mandatory, and used this significant language: "It is only strictly necessary that the person summoned to be a juror shall be eligible as such in other material aspects."

In *S. v. Potts,* 100 N. C., 457, the commissioners did not label the boxes No. 1 and No. 2, as required by the statute, but marked them "Jurors drawn and jurors not drawn," respectively, and had only one key, which was kept by the register of deeds, and the Court held this did not invalidate the venire drawn from it, citing *S. v. Hensley, supra.*

In *S. v. Watson,* 104 N. C., 736, the Court, through *Shepard, J.,* censured the commissioners severely for disregarding the plain provisions of the statute, but sustained the venire, and refused the defendant's motion to quash, because they were directory only, and relied upon *Hensley's case, supra. S. v. Martin,* 82 N. C., 672; *S. v. Haywood,* 73 N. C., 437, which cases hold that in the absence of a corrupt motive the failure to strictly observe the law (now C. S., 2312-2314) does not invalidate the venire.

The drawing of a jury not in strict accordance with directory provisions of the statute is nevertheless valid if it is otherwise properly done, and certainly so if no prejudice appears. *Lanier v. Greenville,* 174 N. C., 311.

*S. v. Wilcox,* 104 N. C., 847, held by a divided Court that where the county commissioners, while drawing the jurors, laid aside the names of several persons who were actually qualified, but were then supposed to be nonresidents, and completed the jury list by substituting other qualified persons, and such action was taken in good faith, it did not invalidate the venire. This case clearly distinguishes the rule applying to the case at bar from the rule announced in *Moore v. Guano Co., supra.*

Our attention is called to the fact that while, of course, the Legislature has full power to prescribe the method of selecting juries, and the defendant has no constitutional right in any particular method of doing

so (*S. v. Brittain,* 143 N. C., 668), several counties have different methods and different regulations, sanctioned by the Legislature, some of which are collected in C. S., 2315.

This Court has had occasion frequently to consider the question now before us. It is highly conducive to the fair and impartial administration of justice that these details of the statute should be strictly observed and followed, and any intentional nonobservance of them is the subject of censure, if not of punishment. But it is well settled that they are only rules and regulations, which are directory, and have never been held to be mandatory where the persons summoned are qualified jurors in other respects. *Bynum, J.,* in *S. v. Haywood,* 73 N. C., 437, quoted with approval in *S. v. Daniels,* 134 N. C., at p. 649. It will be found by an examination of the decisions of this Court that the views expressed by *Justice Bynum* in the *Haywood case, supra,* and those in *S. v. Daniels, supra,* have been generally adopted by this Court. There are seeming departures from them in several of the cases, but when the opinions of the Court are examined in the light of the facts in each particular case, it will be found that the discrepancies are more apparent than real. *Moore v. Guano Co.,* 130 N. C., 229, may be well selected as a leading type of one class of such cases. The language of *Chief Justice Furches* in that case is, at times, very caustic and condemnatory of what was termed the irregular action and conduct of the commissioners of this same county in drawing the jury. But even a cursory examination of that case will disclose the fact that there the commissioners had not only. disregarded the terms of the statute and selected a jury in a manner virtually forbidden by law, at the request of interested persons, who were present, but had actually dispensed with the use of a boy under ten years of age, and the commissioners themselves instead performed the function allotted to him, and the irregularities in that case were of a substantial character and calculated, if permitted, to withdraw from those entitled to the protection of the law in such vital matters affecting their rights, liberty, and property, the safeguards so carefully provided for their preservation. We cannot concur in all that was said by the learned judge who spoke for the Court in *Moore v. Guano Co., supra,* but in the main we do concur with him, and condemn any and all departures from the terms of the statute, though we may not hold that they are so far mandatory in character as to require strict conformity to them in certain instances.

It is not for the commissioners, or others selected to perform public duties, to substitute for the methods chosen by the Leigslature those of their own as being more desirable and better adapted to accomplish the end in view. It is sufficient that the law-making body, appointed by the Constitution for the purpose, has declared its will and its conception

of the best public policy and expediency, and there can be no disagreement among us as to the positive duty of the commissioners to act as, and in the manner, the statute requires and directs, and for an intentional failure to do so they will be "subject to censure if not to punishment," as said by *Judge Bynum* in *S. v. Haywood, supra.* We wish it distinctly understood that we do not approve or sustain, in this case, what the commissioners did in selecting the jury, because they disobeyed the law, but we simply hold, as we have for so long a time held with substantial consistency, that the provisions of the law disregarded by them are directory, and as no harm has come to the defendant, and the commissioners acted in good faith and with no wrong motive, we will not permit their conduct to have the baneful effect of invalidating the indictment, and we add that while we do this in the interest of public justice, it is with the hope and belief that officers charged with the performance of such grave public duties, the neglect of which may entail serious consequences to the public, will hear—and we earnestly hope that they will heed—what we have said in respect to their official obligations. It was asserted before us that this procedure in selecting jurors in this county had been one of very long continuance, and this was suggested, in a measure, as being in the nature of a justification of it. But not so at all. No violation of the law can ever be hallowed, and certainly not excused, or even palliated, because it is suffered to have the merit, or rather the demerit, of age and frequent repetition. But not so, as the longer it continues the more reprehensible it becomes. The better view is that the Legislature writes the laws and we should obey them as they are thus written (*ita lex scripta est*). And thus has it been crystallized into this familiar maxim of the law.

To sum it up: Our courts have not approved the doctrine as formulated and adopted, in *O'Connell and Others v. The Queen,* 11 Ch. & Fin., 15, by the House of Lords, and from which *Lord Denman* so vigorously dissented, but the more reasonable one, as stated in Thompson on Trials, sec. 33, and in *People v. Jewett,* 3 Wendell, 314, and expressly approved by this Court in numerous cases, and especially in *S. v. Daniels,* 134 N. C., 650, where it is said: "The extent to which the authorities go is thus set forth in Thompson on Trials, sec. 33: 'Statutes which prescribe the manner of selecting by county, town, or other officers, the list of persons liable to jury duty from which the panel is drawn, are generally treated as directory merely. It is hence a general rule that irregularities in the discharge of this duty constitute no ground for challenging an array. If the jurors who have been selected and drawn are individually qualified, that is usually deemed sufficient.' In *People v. Jewett,* 3 Wendell, 314, *Savage, C. J.,* says: 'By the act directing the mode of selecting grand jurors, passed in 1827, the duty of making the

selection is conferred upon the supervisors of the several counties of the State. They are required to select such men only as they shall know, or have good reason to believe, to be possessed of the necessary property qualifications to sit as petit jurors; to be men of approved integrity, of fair character, of sound judgment, and well informed. Thus the qualifications of the grand jurors are defined by statute, and if those selected possessed the required qualifications there can be no objection to the array. A grand jury should be selected with a single eye to the qualifications pointed out by the statute, without inquiry whether the individuals selected do or do not belong to any particular society, sect, or denomination, social, benevolent, political, or religious.' The learned *Chief Justice* further says: 'But if they (the officers) did thus err, the array cannot for that reason be challenged. While those who are selected are unexceptionable, the fact that others equally unexceptionable are excluded is no cause of challenge of the array. A challenge can be supported only by showing that the persons selected are not qualified according to the requirements of the statute.' " The right of challenge is a right only to object and not to select.

Although the commissioners acted with the highest and most laudable motive—the desire to promote the public interest by securing, in all cases, intelligent and impartial juries—it is yet better, in the administration of the law, and especially of a statute, to follow the method and directions prescribed therein, as a departure from them may, as in this case, be productive of useless litigation, and for the additional reason that it is the rule the Legislature has enacted, where it had full power to adopt it as the only one; and, moreover, in this instance, it is simple and easy to follow.

We adhere to our former decisions, as we understand them, and applying them to the facts of this case we must refuse to quash the bill and discharge the defendant.

No error.