Battle, J.
 

 "When this ease was before the- Court at June-Term, 1861, one of the questions presented was, whether a building, properly called a barn, was the same with one properly called a crib, and it was decided that it was not, and that, therefore, an indictment for arson, in burning a barn, with grain in it, could not be supported by proof that the
 
 *457
 
 building burnt, was a crib with grain in it • Upon tbe new trial, which took place in consequence of that decision, a special verdict was rendered, in which the building was particularly and minutely described, and it was submitted to the Court to decide whether it was a bam or not, within the meaning of the statute. So, that upon the present appeal, that is the only question presented to us.
 

 Arson, at common law, is defined by Lord Coke to be “ the malicious and voluntary burning the house of another by night or by day.” See 1 Hale’s P. O. 566.
 

 The house burnt, in order to be a felony, must be a dwelling-house, including, however, all outhouses that were parcel thereof, though not contiguous to it or under the same roof, as, for instance, the barn, stable, cow-house, sheep-house, dairy-house and mill-house, or if the house were not parcel of the dwelling, it must have been a barn, having hay or corn in it;
 
 Ibid.
 
 567. In England, the offense of burning houses and other property, is now provided for by various statutes, among which, the most prominent are, 7 Will. 4 and 1 Yict. ,chap. 89, sec. 3, which -re-enacts, with some variations, the 7th and 8th George 4th, chap. 30, sec. 2. This statute makes it a felony to burn or set fire to
 
 “
 
 any house, stable, coach-house, out-house, ware-house, office, shop, mill, malt-house, hopoast, barn or granary,” &c. In this State, also, the offense ■of arson depends mainly, if not altogether, upon the statute law. Thus,'by the 2nd section, chapter 34, of the Revised Code, it is' made a capital felony to burn, wilfully, “ any dwelling-house, or any part thereof, or any barn, then having grain ■or corn in the same, or store, or ware-house, grist or saw-mill-house, or any building erected for the purpose of manufacturing any article
 
 whatever;
 
 and by the 7th and 30th sections, other provisions are made for the protection from burning of the State house, and other public houses, and houses belonging to any incorporate town or company, in the State. It will be seen that our statute does not mention .several of the kinds of houses embraced in that of Great Britain; as for instance, out-houses, stables, coach-houses, offices, granaries, and
 
 *458
 
 some others. In the construction of the English statutes, it is settled that it must be proved, on the part of the prosecution, that the house, burnt, comes within the meaning of the statute, and of the description given in the indictments, and as the statutes are highly penal, the construction of them, in these particulars, is very strict. For cases on the subject, see Boscoe’s Crim. Ev. p. 276, et seq. Our statute, upon which the indictment, in the present case, is founded, is as highly penal as any known to our law, and must, therefore, receive a construction which will prevent the possibility of the prisoner’s
 
 losing his life for
 
 an
 
 offense not
 
 within the contemplation of the Legislature. He is charged with burning a barn, and the special verdict finds that he burnt a house of the description therein particularly set forth. If such a house be a barn, he is guilty; if not, he is not guilty. In Webster’s Dictionary, a “ barn” is said to be “ a covered building for securing grain, hay, flax and other productions of the earth.” Bouvier, in his Law Dictionary, defines it to be “ a building on a farm, $sed to receive the crop, the stabling of animals, and other purposes.” The house described, in the special verdict, certainly does not come within the meaning of either of these definitions; but it does come within the
 
 meaning of a
 
 crib, which, according to Webster, is a term, used in the United States, to signify “ a small building, raised on posts, for storing Indian corn,” or a granary, which, according to .same authority, is “ a store-house or repository of grain, after it is threshed ; a corn-house.” We have seen that in the English statute, above referred to, a granary is mentioned as a different house from that of a barn, and we believe that in many parts of this State, and perhaps in the greater part of it, there is a well-known distinction between a barn and a granary or a crib, corresponding in the main with the above definitions. Many of the wealthy planters have both kinds of houses, while most of the farmers, in moderate circumstances, have only one.
 

 Our conclusion is, that the building, as described in the the special verdict, was not a barn within the meaning of the
 
 *459
 
 statute ;x and that not being a barn in itself, it was not made so by having been used for keeping the refuse Indian corn, and for storing peas, oats and other produce of the farm-. The statute requires that the house shall be a barn, and shall, besides, have corn or grain in it, to make the burning of it a capital felony.
 

 The judgment in favor of the prisoner, upon the special verdict, must be affirmed, and it must be so certified to the Court below.
 

 Per Curiam,
 

 Judgment affirmed.