## STATE v. PARKER.

### (Filed April 7, 1903.)

1. JURY—*Drawing—Challenges—Quashal—The Code, Sec. 1101—Arrest of Judgment.*

   That a special venire had been drawn by a boy over 10 years of age and five of the venire had served as jurors should have been taken advantage of by a challenge to the array or a motion to quash the panel before the jury was sworn, and not by a motion in arrest of judgment.

2. EVIDENCE—*Examination of Prisoners—Witnesses—The Code, Secs. 1145–1149.*

   Any admission or confession made by a prisoner while under oath before a committing magistrate, whether reduced to writing or not, or made in the presence of witnesses, should not be received in evidence.

3. EVIDENCE—*Examination of Prisoners—Witnesses—The Code, Secs. 1145–1149.*

   Where the record of a committing magistrate merely states that the prisoner was cautioned and the trial court holds such admission competent, with no other evidence before him except this statement, it is error. as the trial judge should have found as a fact whether the proper caution was given to the prisoner.

INDICTMENT against John Parker, heard by Judge *Thomas A. McNeill* and a jury, at August Term, 1902, of the Superior Court of DURHAM County. From a verdict of guilty and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*Jones Fuller,* for the defendant.

WALKER, J. The defendant was indicted for unlawfully and carnally knowing and abusing a female under the age of ten years, the indictment having been drawn and found under Section 1101 of The Code, by which the offense is made a capital felony. The defendant was convicted and to the judgment pronounced he excepted and appealed.

He assigns two errors as having been committed by the court during the course of the trial. A special venire of

twenty-five freeholders was summoned under the order of the court, whose names were drawn from the jury box, in the presence and under the direction of the court, by a boy who was over ten years of age, and five of the jurors so drawn were taken and served upon the jury. There does not appear to have been any challenge or objection to any of them. So far as it does appear, they were each and all perfectly acceptable to the State and defendant.

After the verdict of guilty had been returned by the jury, the defendant through his counsel moved in arrest of judgment upon the ground that the special venire had been drawn by a boy over ten years of age and that five of the venire had served as jurors in the case.

The motion of the defendant to arrest the judgment was properly overruled. It was too late after the verdict to present any objection to the manner of selecting the jurors for the special venire by a motion in arrest of judgment. Even if the motion be treated as substantially one for a *venire de novo* (and in a case of this magnitude we would be so disposed to treat it, at least with the consent of the Attorney-General, provided that there was real merit in the motion) it could not be sustained, as the proper method of taking advantage of the irregularity is by a challenge to the array or by a motion to quash the panel before the jury are sworn and charged with the case. As this was not done, there was a waiver of the objection and the defendant forfeited his right to insist upon it thereafter.

The regulations and requirements concerning the drawing of a jury or of a special venire may be directory, but they should be strictly observed. A failure though, to follow the directions of the statute will not invalidate the panel in the absence of bad faith or corruption, or other adequate cause for setting it aside. *State v. Perry,* 122 N. C., 1018; *State v. Dixon,* 131 N. C., 810. In *State v. Underwood,* 28 N. C.,

96, where the grand jury was drawn by a boy 13 years of age it was contended that such illegal drawing might have affected the composition of the petit jury, the prisoner moved for a new trial and also in arrest of judgment, and the court held that the objection, if a valid and sufficient one at any time, should have been made after the petit jury were sworn, and should be in the form of a challenge to the array.

We believe the general rule to be that where the objection is to the whole list or panel, it must be taken by challenge to the array or by motion to quash the panel, which must be made as soon as the facts which warrant it become known; and it is generally held that the challenge or objection must be interposed before entering on the formation of the jury and before the interposition of challenges to the polls, or before the jury has • been completed or made up or have been sworn, or before entering on the trial; and it is certainly too late after trial and verdict on a motion for a new trial. 12 Enc. Pl. & Practice, 424; *State v. Speaks,* 94 N. C., 865; *State v. Boone,* 82 N. C., 637; *State v. Douglas,* 63 N. C., 500. The court therefore did not err in overruling the motion to arrest the judgment.

But we think there was error committed by the court in the admission of testimony to which the defendant duly objected, which entitles him to a new trial. The defendant testified in his own behalf after the State had closed its evidence and on the cross examination the Solicitor was permitted to ask him if his statement during the trial below did not contradict that made at the preliminary hearing before the committing magistrate, and proposed to call his attention to certain statements of the defendant contained in the evidence before the magistrate, which had been reduced to writing and signed and sworn to by him. It appeared that the defendant had been sworn before he testified at the investigation before the magistrate and that his testimony was taken in the presence

of other witnesses. It is also stated in the case that he was examined by the magistrate "after being cautioned." That is all. It does not appear in what way he was cautioned or what was said to him by the magistrate before he testified.

It is provided by the statute, The Code, Sections 1145–1149, that after examining the complainant and the witnesses for the prosecution, the magistrate shall then proceed to examine the prisoner. The examination shall *not be on oath,* and before he is examined the prisoner shall be informed of the charge against him and shall be allowed reasonable time to send for and advise with counsel. At the commencement of the examination, the prisoner shall be informed by the magistrate that he is at liberty to refuse to answer any question that may be put to him and that his refusal to answer shall not be used to his prejudice at any stage of the proceeding. Answers shall be read to the prisoner, when he may correct or add to them, and when made conformable to what he declares is the truth they shall be certified and signed by the magistrate. After the examination of the prisoner is completed, his witnesses, if he have any, shall be sworn and examined, and he may have the assistance of counsel in such examination. The witnesses produced on the part either of the prisoner or of the prosecution shall not be present at the examination of the prisoner.

The provisions of this statute, which is substantially a copy of that of 11 and 12 Vict., which was itself an amendment and enlargement of the earlier statutes of 2 & 3 Phillip & Mary and 7 Geo. IV on the same subject, have received a uniform interpretation so far as they affect the particular question under consideration. It was intended by them to safeguard the rights of the prisoner as guaranteed by the law, and to afford him every protection against imposition, oppression or undue influence, so that what he may say in any investigation in regard to the accusation against him

may be entirely voluntary. This provision of the law should at all times and under all circumstances be rigidly observed. It was the purpose and intent that the person under examination, who is accused of crime, should feel free to admit or deny his guilt, and the oath which is forbidden by statute deprives him of this perfect freedom. We must hold, therefore, as it has always been determined by this and other courts, that any admission or confession made by the prisoner before the committing magistrate, whether reduced to writing or not, which was made while he was under the compulsion of an oath, was not voluntary and should not have been received in evidence nor should the Solicitor have been allowed to refer to it or to comment upon it or to use it either directly or indirectly for the purpose of contradicting the defendant on the cross examination of him. *State v. Broughton,* 29 N. C., 96; 45 Am. Dec., 507; *State v. Matthews,* 66 N. C., 106; *State v. Young,* 60 N. C., 127.

The rule in regard to the confession of a prisoner made while under oath was so strictly enforced in England that, when the magistrate returned his examination in writing to the court and it was therein stated that the prisoner was sworn, the prosecution was not allowed to contradict this averment. *Reg. v. Pikesly,* 9 C. & P., 124; *Rex v. Rivers,* 7 C. & P., 177; *Rex v. Smith,* 1 Starkie, N. P., 242. This is not the rule here, and it is merely referred to in order to show with what strictness the rule was sometimes enforced and how careful the courts have been to see that the prisoner, at the time his statement was made before the magistrate, was absolutely free and unrestrained.

It does not appear in this case that the prisoner was cautioned as required by the statute, that is, in the manner therein prescribed. It merely appears that "he was cautioned," but in what this caution consisted, whether he was advised as to his rights or told by the magistrate that he was

at liberty to refuse to answer any question put to him and that his refusal to answer could not be used against him at any stage of the proceedings, or what was said to him in this connection, in no way appears.

The prisoner objected to the use of this written statement by the Solicitor on two grounds: 1. That the statement was taken while he was under oath. 2. That it was taken in the presence of other witnesses. The defendant did not specially assign, as one of the grounds of objection, that he was not properly cautioned by the magistrate, but we think it sufficiently appears that the objection was really directed against the statement itself as having been procured in violation of the statute and we have so treated it, as we are disposed in cases of this kind to be somewhat liberal in our construction of what has been said and done, so as to ascertain the real contention of counsel and to decide the case upon its substantial legal merits without too much regard for mere matters of form.

The judge should have found as a fact whether the proper caution was given to the defendant before he testified or made his statement at the trial before the magistrate, but instead of doing so it appears from the case that no inquiry whatever was made into the matter, and the court made its ruling upon the bare statement that the prisoner "had been cautioned." That, in our opinion, was not sufficient.

Mr. Archbold says: "This statute was enacted as a humane provision of the English law to prevent a prisoner from committing himself by any unadvised admission, which otherwise in his confusion and agitation, arising from the proceeding against him, he might make without calculating on its consequences. It is in the true spirit of fairness toward the prisoner which distinguishes the administration of criminal justice in this country from its administration in any other

country in Europe." Arch. Cr. Pr. & Pl. (6 Ed.), pp. 131, 132.

The defendant was entitled to have the statement excluded from the consideration of the jury, when his objection to it was made, for the reasons we have given, and in failing to exclude it the court erred to the prejudice of the defendant.

The verdict must, therefore, be set aside and a new trial awarded.

*Per Curiam*: New Trial.