STATE v. ROY KIRKSEY.

(Filed 21 May, 1947.)

**1. Jury §§ 1, 3—**

Objection that defendant was denied a trial by his peers for the reason that Negroes were excluded from the petit jury must be presented by a challenge to the array and cannot be presented by defendant's challenge to the twelfth juror after he had exhausted his peremptory challenges, the fact that the venireman tendered as the twelfth juror is a white man not being ground for challenge for cause. G. S., 15-163.

**2. Constitutional Law § 33—**

Upon objection that defendant is denied a trial by his peers for the reason that Negroes were excluded from the petit jury, the trial court's findings of fact when supported by sufficient evidence are conclusive on appeal in the absence of gross abuse.

**3. Homicide § 25—**

Evidence that defendant went to the home of his mother-in-law about sundown and assaulted his estranged wife, cutting a gash in her arm, and that when his wife returned from the hospital about midnight, defendant was seen in the yard by the light of the car, that his wife got out of the car, and that defendant shot and killed her as she was attempting to run behind it, is sufficient evidence of murder in the first degree to be submitted to the jury.

**4. Homicide § 3—**

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation.

**5. Homicide § 14—**

An indictment for murder in the first degree need not allege deliberation and premeditation, an indictment in the form prescribed by statute, G. S., 15-144, being sufficient. G. S., 14-17. G. S., 15-172.

APPEAL by defendant from *Thompson, J.,* at 9 December, 1946, Special Criminal Term of COLUMBUS.

Criminal prosecution upon the following bill of indictment: "The jurors for the State upon their oath present, that Roy Kirksey, late of Columbus County, on the 4th day of July, A.D. 1945, with force and arms, at and in the said county, feloniously, willfully, and of his malice aforethought did kill and murder Eloise W. Kirksey contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

Verdict: Guilty of the felony and murder in the manner and form as charged in the bill of indictment.

Judgment: Death by the administration of lethal gas.

Defendant appeals therefrom and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*W. F. Jones and Robert C. Schulken for defendant, appellant.*

WINBORNE, J. Defendant in brief filed in this Court presents, as involved on this appeal, three questions, which we consider *seriatim:*

I. The question arises in this manner: After defendant had been arraigned and had pleaded not guilty, and trial had begun, and after eleven jurors had been duly selected, and after defendant had exhausted all peremptory challenges allowed by law, another special venireman, B. J. Mincher, was called and accepted by the State, and tendered to defendant, who challenged the juror peremptorily, upon the ground that defendant, being of the colored race and all of the eleven jurors in the box and all veniremen summoned for jury duty being white men, he

was thereby denied a trial by his peers. After hearing evidence of the defendant in support of his motion and challenge to the proposed juror, the court found facts which appear of record, and thereupon overruled the defendant's motion and challenge as to B. J. Mincher. Exception by defendant.

The exception taken to the refusal of the court to sustain the challenge to the special venireman, B. J. Mincher, under the circumstances set forth, is not well taken, and is not sustained for these reasons: "Unless an objection goes to the whole panel of jurors, it may not be taken advantage of by a challenge to the array." *S. v. Levy,* 187 N. C., 58⁷, 122 S. E., 386, citing *S. v. Hensley,* 94 N. C., 1021; *S. v. Stanton,* 118 N. C., 1182, 24 S. E., 536. *Moore v. Guano Co.,* 130 N. C., 229, 41 S. E., 293; *S. v. Parker,* 132 N. C., 1014, 43 S. E., 830; *S. v. Mallard,* 184 N. C., 667, 114 S. E., 17.

"A challenge to the array," as stated in *S. v. Hensley, supra,* "can only be taken when there is partiality or misconduct in the sheriff, or some irregularity in making out the list." See *S. v. Moore,* 120 N. C., 570, 26 S. E., 697; *S. v. Levy, supra; S. v. Dixon,* 215 N. C., 438, 2 S. E. (2d), 371.

If defendant had wished to take advantage of his objection to the petit jury and special venire, he should have done so by challenging the array. *S. v. Douglass,* 63 N. C., 500, and before entering upon the trial of his case.

Objections to individual jurors are made by challenges to the polls. These challenges are of two kinds—peremptory and for cause. Defendant had exhausted the number of peremptory challenges allowed to him by law, G. S., 15-163, and the fact that the venireman tendered is a white man is not a disqualifying cause. See *S. v. Levy, supra,* for summary of the principal challenges to the polls now recognized by our practice, and of which either side may take advantage at the trial.

Moreover, if the challenge had been timely and appropriately taken, the findings of fact by the presiding judge, which are supported by sufficient evidence, are conclusive on appeal in the absence of gross abuse. *S. v. Cooper,* 205 N. C., 657, 172 S. E., 199; *S. v. Walls,* 211 N. C., 487, 191 S. E., 232, in which appeal is dismissed by U. S. Supreme Court. 302 U. S., 635, 58 S. Ct., 18, 82 L. Ed., 494; *S. v. Henderson,* 216 N. C., 99, 3 S. E. (2d), 357; *S. v. Daniels,* 134 U. S., 641; *Texas v. Thomas,* 212 U. S., 278, 753 L. Ed., 512.

II.  The second question pertains to assignment of error challenging the correctness of the action of the trial court in overruling motion of defendant for judgment as of nonsuit, and is also untenable.

The evidence for the State—the defendant having offered none—tends to show substantially these facts: On 4 July, 1945, defendant and deceased were husband and wife—though living in a state of separation—

she with her mother in Columbus County, North Carolina, and he with his father, about a mile away. About sundown on that day defendant went to the home of the mother of his wife and asked for his wife. On being informed that she was in the house dressing, he went in and a fight followed, scuffling in the room, and continued out in the back yard where he was seen with an axe, and then his wife came in the house with gash .cut in her arm. He remarked to his wife's mother, "I love her good enough to kill her." His wife was taken by automobile about dark to hospital in Whiteville to get her arm sewed up. Four others went with her. As they returned to the home of her mother, about midnight, defendant was seen by the light of the car, as he was coming from behind a near-by chinaberry tree, toward the car, in direction of his wife, with his hand behind him. His wife got out of the car and ran behind it, and just as she got to the back bumper, a gun in the hand of defendant fired, and she was shot in the back. She exclaimed, "Roy, don't kill me now," and then "Roy has done killed me now." No one had said anything to defendant at that time, and he said nothing .before he shot. She died soon after being shot, from result of the gunshot wound. Defendant left and was arrested on 9 September, 1946, in Savannah, Georgia, more than a year thereafter.

This evidence is abundantly sufficient to support a verdict of murder in the first degree. Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *S. v. Starnes*, 220 N. C., 384, 17 S. E. (2d), 346.

III. The third question relates to assignment of error that the court below erred in refusing to allow his motion in arrest of judgment for that the bill of indictment fails to charge murder in the first degree—contending that since the Act of 1893, Chapters 85 and 281, dividing murder into two degrees, the indictment "should charge deliberation, premeditation and malice, the essential elements of first degree." However, by referring to the 1893 Act, and tracing provisions of it through successive codifications, the contention fails, and the assignment may not be sustained.

In this connection the Act of 1893, Chapter 85, after providing in sections one and two for division of the crime of murder into two degrees and defining the same, provides in section three that "nothing herein contained shall be construed to require any alteration or modification of the existing form of indictment for murder, but the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree." Thereafter, when the statutes were next codified the Act of 1893 was divided—sections one and two of Chapter 85 and Chapter 281 becoming Section 3631 of Revisal of 1905 under chapter entitled "Crimes," and later C. S., 4200, in chapter on "Crimes and Punishment," and now G. S., 14-17, in chapter entitled

"Criminal Law"; and said section three of Chapter 85 becoming Section 3271 of Revisal of 1905 under chapter on "Criminal Procedure," and later as C. S., 4642, and now G. S., 15-172, under similar chapters.

Moreover, as to form of indictment for murder existing at the date of the Act of 1893, Chapter 85 and 281, we find "An act to simplify indictments in certain cases," Laws of 1887, Chapter 58, which provides in pertinent part, as follows: "Section 1. That in bills of indictment for murder and manslaughter it shall not be necessary to allege matters not required to be proved on the trial; but in the body of the indictment, after naming the person or persons accused, and the county of his or their residence, the date of the offense, the averment 'with force and arms,' and the county of the alleged commission of the offense, as is now usual, it shall be sufficient in describing murder to allege that the accused person or persons (as the case may be), feloniously, wilfully, and of his or their malice aforethought, did kill and murder (naming the person killed) and concluding as is now required by law . . .; and any bill of indictment containing the averments and allegations herein shall be good and sufficient in law as an indictment for murder or manslaughter as the case may be."

This statute was later codified and brought forward as Revisal 3245, and later as C. S., 4614, and now as G. S., 15-144.

Applying the provisions of this statute, G. S., 15-144, it is seen that the bill of indictment in the case in hand is drawn in conformity therewith.

After careful consideration of the record and case on appeal, we are unable to find cause to disturb the judgment pronounced, and from which the appeal is taken.

No error.