### STATE v. BOOKER T. ANDERSON.

(Filed 7 April, 1948.)

**1. Criminal Law § 27: Evidence § 2—**

The courts will take judicial notice of the day of the week on which a particular date falls, the dates of the terms of the Superior Courts, and of the judges of the Superior Court. G. S., 7-50; G. S., 7-70.

**2. Judges § 2c—**

The recitation of an erroneous date in the concluding part of a commission to an emergency judge to hold a term of court will not invalidate the commission when it is manifestly a clerical error without tendency to mislead when the commission is construed in its entirety in the light of the dates for the commencement of the terms of court. Constitution of N. C., Art. IV, sec. 11; G. S., 7-50.

**3. Jury § 9—**

A written order entitled as of the action, commanding the sheriff to summon a special venire of twenty-five freeholders from the body of the county to appear on a specified date to act as jurors in the case, is in substance a special writ of *venire facias.*

**4. Same—**

An order for a special venire properly specifies that the veniremen are to be freeholders. G. S., 9-11; G. S., 9-16; G. S., 15-165.

**5. Same—**

The failure of the trial judge to sign the order for a special venire does not alone invalidate the special venire, it having been ordered and summoned in all other respects in conformity with statute. G. S., 9-29.

**6. Jury § 4½—**

Objection to a special venire is waived by failure to challenge the array until after trial and judgment.

**7. Same—**

Objection to individual jurors is waived by failure of challenge to the polls and failure to exhaust peremptory challenges.

**8. Arson § 7—**

Evidence tending to show that a dwelling house was willfully and maliciously burned by the criminal agency of some responsible person and that such person was the defendant, is sufficient to overrule nonsuit in a prosecution for arson.

**9. Homicide § 25—**

Evidence tending to show that defendant perpetrated or attempted to perpetrate the crime of arson upon a dwelling house and thereby proximately caused the deaths of the occupants, is sufficient to be submitted to the jury on the charge of murder in the first degree. G. S., 14-17.

**10. Criminal Law § 81c (3)—**

Exception to the admission of evidence cannot be sustained when evidence to the same effect is admitted without objection.

**11. Criminal Law § 53f—**

The fact that the court necessarily consumes more time in stating the contentions of the State because of the greater volume of the State's testimony is not ground for exception, it being incumbent upon defendant to call the court's attention at the time to any asserted failure to fully and accurately state his contentions or if he desires any amplification thereof.

**12. Criminal Law § 78e (1)—**

An exception to the charge "as a whole" is unavailing as an unpointed exception.

**13. Arson § 8: Homicide § 29—**

Upon verdict of guilty of arson, G. S., 14-58, there being no recommendation by the jury in respect to the punishment, and verdict of guilty of murder in the first degree, G. S., 14-17, sentence of death is mandatory.

APPEAL by prisoner, Booker T. Anderson, from *Grady, Emergency Judge*, and a jury, at the August Term, 1947, of PITT.

The August Term of the Superior Court of Pitt County opened on Monday, 25 August, 1947. Honorable Henry A. Grady, an Emergency Judge, presided over the term under a commission directed to him by the Governor, reciting that it had been made to appear to the Governor that good and sufficient reasons existed why Honorable W. C. Harris, the Judge assigned thereto under Article IV, Section 11, of the State Constitution, was unable to hold the regular term of the Superior Court of Pitt County "beginning August 25th, 1947," and commissioning Judge Grady "to hold said term of said Court for the County aforesaid, beginning on Monday, the 25th day of July, 1947, and continue one week, or until the business is disposed of."

Separate counts of the indictment charged the prisoner with the commission of the following four capital felonies, namely: (1) The willful and malicious burning of the dwelling house of Willie Belle Cratch, Bobbie Eugene Cratch, and Jessie Cratch; (2) the murder of Willie Belle Cratch; (3) the murder of Bobbie Eugene Cratch; and (4) the murder of Jessie Cratch.

Upon his arraignment, the prisoner pleaded not guilty to all matters charged against him. Thereupon the judge, acting upon the joint recommendation of the solicitor and counsel for the defense, made an order in this cause in open court in the presence of the prisoner, commanding the sheriff to summon a special venire of twenty-five freeholders from the body of Pitt County to appear before the court "on Wednesday morning, August 27, 1947, at 9:30 A. M. to serve as jurors in this cause." The order was not signed by the judge, but it was reduced to writing, entered on the minutes, and issued to the sheriff by his direction. The sheriff executed the order and returned it to the clerk of the court on the day when it was returnable, with the names of the twenty-five special veniremen summoned by him. The petit jury was chosen in part from the original panel drawn by the board of county commissioners before the term, and in part from the special venire summoned by the sheriff under the order of the judge. The prisoner did not object in any way before judgment to the validity of the order for the special venire, or to the mode in which it was summoned. The record does not indicate that the prisoner was compelled to accept any petit juror over his objection, or that the peremptory challenges allowed him by statute were exhausted when the jury was completed.

The testimony adduced by the State at the trial tended to show the circumstances hereafter set out. Willie Belle Cratch, a young widow, regularly resided in a dwelling house on Cotanche Street in Greenville with her mother, Annie Belle Spain, her six-year-old son, Bobbie Eugene Cratch, and her one-year-old daughter, Jessie Cratch. Shortly before

eleven o'clock on the night of 15 May, 1947, Willie Belle Cratch and the two children went to sleep in the same bed in their bedroom in this residence. After their retirement, Annie Belle Spain visited a neighbor about half an hour. As she was returning home, she saw the dwelling house "afire," smelled rags burning, and turned in the alarm.

After fire fighters thus called to the scene had subdued the flames, the house was entered, and it was ascertained that both of the children had been "burned very badly" and were already dead. The body of Jessie Cratch was on the bed, and that of Bobbie Eugene Cratch was on the floor beside the bed. Willie Belle Cratch lay in an unconscious state upon the floor some eight feet away. She was burned from head to feet, and died early the next morning.

The fire had been virtually confined to the bedroom occupied by the decedents. The floor of this room was "very much charred," and the door between it and the adjoining hallway was also "badly charred." Other parts of the room "were scorched by the radiation of heat." The fire had been "worse around the bed" and a nearby closet. The bed was "charred mighty bad," and one of its side rails "had been burned in two." Annie Belle Spain owned a white enameled dish pan which was habitually kept on the back porch of the dwelling. After the fire, this pan was discovered at the bed "exactly where the side rail had burned in two." The pan was "burned black inside" and "had a kerosene smell to it." The police found a glass jar containing some kerosene oil in the hallway just outside the bedroom of the decedents. This jar did not belong to any of the occupants of the house and had not been seen upon the premises before the fire.

The prisoner lived "on Douglas Avenue, about a mile from the house that was burned." Some three or four hours prior to the fire, he rode to the immediate neighborhood of the dwelling of the decedents in a taxi. At that time, he was carrying a "wrapped-up package." After the fire alarm sounded, the prisoner was observed about a half mile distant from the burning house on Cotanche Street, running towards his home on Douglas Avenue.

The prisoner had been keeping company with Willie Belle Cratch before these events, but Annie Belle Spain had objected to the association and had forbidden him to call upon her daughter. Soon after the fire, the prisoner was taken into custody as a suspect. He first denied that he had had anything to do with the burning, but he subsequently confessed that he had set the dwelling on fire with intent thereby to destroy the house. He stated, however, that he had no purpose to harm any of the decedents, and had no knowledge that any persons were inside the house when he started the fire by throwing a lighted match into a pan containing kerosene oil setting under the head of the bed. Accord-

ing to the State's witness, J. R. Tanner, chief of police of Greenville, the prisoner explained his motive for setting the fire as follows: "He said the reason he did it was he had a place fixed on Douglas Avenue to move Willie Belle Cratch and her children to, but that he could not make any headway because of her mother, Annie Belle Spain; . . . that he was just trying to put Willie Belle Cratch on the street so that she would have to come and live with him, and that if he could have only gotten rid of Annie Belle Spain this would not have happened."

After the prisoner had made his confession, he was escorted to the premises by the police, and there re-enacted his version of the setting of the fire.

The prisoner offered testimony at the trial tending to show that he had no connection with the burning of the house, and that he did not make any admissions or confessions to that effect.

The petit jury, however, did not accept the evidence presented in behalf of the prisoner because it returned a verdict finding the prisoner "guilty of arson and murder in the first degree." The jury made no recommendation with respect to the punishment on the conviction for arson. Sentence of death was pronounced against the prisoner, and he thereupon appealed to this Court, relying upon the exceptions hereafter considered.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*J. H. Harrell for the prisoner, appellant.*

ERVIN, J. Subsequent to the passing of the death sentence, the prisoner challenged the validity of his trial for two reasons not theretofore advanced by him. He then asserted for the first time that the court was "illegally constituted and without authority to try and sentence him at the term beginning August 25, 1947, as the commission of the Governor commissioned Judge Henry A. Grady to hold a term of court in Pitt County beginning on Monday, the 25th day of July, 1947," and that the members of the petit jury "who were of the special venire were illegally summoned and therefore not duly constituted jurors as no order was signed and issued by the trial judge to the sheriff of Pitt County to summon the special venire."

This Court judicially knows these things: (1) That 25 July, 1947, fell on Friday and not on Monday, 31 C. J. S., Evidence, section 100; (2) that no regular term of the Superior Court of Pitt County was scheduled to begin on 25 July, 1947, or on any other day during such month, G. S., 7-70; (3) that a regular term of the Superior Court of Pitt County was appointed by law to begin on Monday, 25 August, 1947, and to continue

for one week for the trial of criminal and civil cases, G. S., 7-70; *Corbin v. Berry,* 83 N. C., 28; 31 C. J. S., Evidence, section 47; (4) that Honorable W. C. Harris, the Judge of the Seventh Judicial District, was assigned to hold such term of the Superior Court of Pitt County under Article IV, Section 11, of the State Constitution, *Corbin v. Berry, supra;* (5) that Honorable Henry A. Grady was an Emergency Judge of the Superior Court at the times in question. *Reid v. Reid,* 199 N. C., 740, 155 S. E., 719; *Bohannon v. Trust Co.,* 198 N. C., 702, 153 S. E., 263. When the commission of the Governor is read and construed in its entirety in the light of these matters, it becomes indisputably manifest that the Governor thereby commissioned Judge Grady to hold the term of the Superior Court of Pitt County convening on Monday, 25 August, 1947, and that the recited date "July 25, 1947," in the concluding part of the commission constituted a mere clerical error without tendency to mislead. Consequently, we overrule the challenge to the authority of Judge Grady to hold the court at which the prisoner was tried, convicted, and sentenced. See N. C. Const., Art. IV, Section 11; G. S., 7-50.

The written order made out by the court and placed in the hands of the sheriff for execution was entitled as of this action, and commanded the sheriff to summon a special venire of twenty-five freeholders from the body of Pitt County to appear before the court on a specified day to act as jurors in this particular case. Clearly it was, in substance, a special writ of *venire facias. Durrah v. State,* 44 Miss., 789, 796; *Waterbury v. Miller,* 13 Ind. App., 197, 41 N. E., 383; *Thurman v. Commonwealth,* 107 Va., 912, 60 S. E., 99. As the special venire was not to be drawn from the box, the order properly specified that the veniremen were to be freeholders. G. S., 9-11; G. S., 9-16; G. S., 15-165; *S. v. Lord,* 225 N. C., 354, 34 S. E. (2d), 206. The record discloses that the sheriff executed the order and returned it to the clerk of the court on the day when it was returnable, with the names of the twenty-five freeholders summoned by him. It, therefore, appears that the special venire was ordered and summoned in substantial compliance with the relevant statute. G. S., 9-29. See, also, *S. v. Parker,* 132 N. C., 1014, 43 S. E., 830. As there is nothing in the record indicating that such omission adversely affected in any degree the inherent right of the prisoner to a trial by a fair and impartial jury, we are constrained to hold that the failure of the trial judge to sign the order was at most an irregularity which did not invalidate the special venire.

Moreover, the prisoner's objection to the jurors is unavailing for the additional reasons that it was not raised in apt time or in the appointed way. It is to be noted that the ground of his objection to the petit jurors "who were of the special venire" was apparent to the prisoner on the face of the record before the court embarked upon the task of selecting a trial jury, and the prisoner did not assert that such jurors were dis-

qualified until after he had been convicted and sentenced to death. He waived any right to question the competency of the special venire as a whole by proceeding to trial without interposing a challenge to the array. *S. v. Douglass,* 63 N. C., 500; *S. v. Kirksey,* 227 N. C., 445, 42 S. E. (2d), 613. He did not object to the jurors in question as individuals by challenges to the polls. *S. v. Kirksey, supra; S. v. Koritz,* 227 N. C., 552, 43 S. E. (2d), 77. Besides, the petit jury was obtained from the original panel and the special venire without the peremptory challenges allowed the prisoner by statute being exhausted. *S. v. Brogden,* 111 N. C., 656, 16 S. E., 170.

The prisoner challenged the sufficiency of the State's evidence to sustain convictions for arson and murder by motions for judgment of nonsuit, and reserved exceptions to adverse rulings on these motions.

Obviously, the testimony offered by the State was sufficient to justify the conclusions that the dwelling house of Willie Belle Cratch, Bobbie Eugene Cratch, and Jessie Cratch was willfully and maliciously burned by the criminal agency of some responsible person, and that such person was the prisoner. It follows that the court properly submitted to the jury the question of the prisoner's guilt upon the first count in the indictment charging arson. *S. v. Laughlin,* 53 N. C., 455; *S. v. Porter,* 90 N. C., 719; *S. v. McCarter,* 98 N. C., 637, 4 S. E., 553. Furthermore, it is plain that the evidence adduced by the State was ample to warrant a finding that the prisoner perpetrated or attempted to perpetrate the crime of arson upon the dwelling house of Willie Belle Cratch, Bobbie Eugene Cratch, and Jessie Cratch, and thereby proximately caused their deaths. It thus appears that the court was required to leave to the jury the questions of whether the prisoner was guilty of murder in the first degree as charged in the second, third, and fourth counts. G. S., 14-17.

The testimony of the State's witnesses, George Gardner and Bunion Taft, seems to have been competent. Be this as it may, however, the prisoner waived the benefit of his exceptions to its admission by permitting other evidence to the same effect to be received without objection. *S. v. Oxendine,* 224 N. C., 825, 32 S. E. (2d), 648.

The record does not sustain the prisoner's contention that he suffered prejudice because the court in its charge used more time in reviewing the contentions of the State than it did in outlining those of the prisoner. The action of the court in this respect was made inevitable by the fact that the volume of the State's testimony was much greater than that presented in behalf of the accused. *S. v. Cureton,* 218 N. C., 491, 11 S. E. (2d), 469. As *Mr. Justice Barnhill* observed in *S. v. Jessup,* 219 N. C., 620, 14 S. E. (2d), 668, if the prisoner "considered that the court had failed to give fully and accurately the contentions made by him, or if he desired any amplification thereof, it was his duty to call the court's

attention thereto at the time." The prisoner's exception to the charge "as a whole" is an unpointed exception which is unavailing on appeal. *Miller v. Bottling Co.,* 204 N. C., 608, 169 S. E., 194. The other exceptions to the charge have been abandoned under Rule 28.

The jury found the prisoner guilty of the crime of arson, but did not recommend that his punishment therefor should be imprisonment for life rather than death as authorized by the statute. G. S., 14-58. Likewise, it convicted him of murder in the first degree. G. S., 14-17. Hence, the sentence of death was mandatory.

We have striven to give the matters at issue on this appeal a consideration commensurate with the present plight of the prisoner and the deplorable tragedy out of which the prosecution arose. Our endeavor in this respect convinces us that no error in law occurred on the trial.

No error.