STATE OF NORTH CAROLINA v. OTIS EUGENE PEELE.

(Filed 14 June 1968.)

**1. Constitutional Law §§ 29, 30—**

The Fifth Amendment right to plead not guilty in a criminal prosecution and the Sixth Amendment right to demand a jury trial are made applicable to State trials by the due process clause of the Fourteenth Amendment.

**2. Same; Criminal Law § 24; Rape § 7; Jury § 1—**

G.S. 14-21, setting the punishment for rape at death unless the jury recommends life imprisonment, and G.S. 15-162.1, permitting a defendant who is represented by counsel to tender a written plea of guilty to a charge of rape which, if accepted by the State and approved by the court, has the effect of a jury verdict of guilty with a recommendation of life imprisonment, do not together place an impermissible burden on the right of a defendant charged with rape to plead not guilty and to demand a jury trial so as to prevent the death penalty from being imposed under any circumstances for the crime of rape.

**3. Same—**

In a prosecution for rape, defendant's rights to plead not guilty and to demand a jury trial were not deterred by a fear of the death penalty, which he could escape by pleading guilty, where defendant entered a plea of not guilty and was tried by a jury which found him guilty as charged with a recommendation of life imprisonment.

**4. Arrest and Bail § 3—**

Where the mother of a 10-year-old alleged rape victim saw defendant and the victim in a compromising position, observed the victim's bloody condition and called police officers, who arrived immediately, and the officers heard the mother's story, observed the victim's condition and apprehended defendant in the act of leaving the scene, the officers possessed ample evidence to authorize the arrest of defendant without a warrant. G.S. 15-41.

**5. Criminal Law §§ 42, 84—**

Clothing taken by officers from the person of defendant as an incident to a lawful arrest is not gained by an unlawful search and seizure, and the clothing and testimony of the results of a chemical analysis of blood-stains found thereon are properly admitted into evidence.

**6. Jury § 7—**

In a prosecution for rape, the State is entitled to challenge for cause prospective jurors who state under oath that they have moral and religious scruples against capital punishment which would make it impossible for them to return a verdict of guilty as charged without a recommendation of life imprisonment, even though the State proved the guilt of defendant beyond a reasonable doubt.

**7. Same—**

Where defendant did not challenge for cause or otherwise any jurors on the panel that tried him and did not exhaust his peremptory challenges, objection to the jury is not properly raised on appeal.

**8. Criminal Law §§ 102, 165—**

Objection to portions of the State's argument to the jury should be made before the case is submitted to the jury.

**9. Criminal Law § 102—**

The manner of conducting the argument of counsel, the language employed, and the temper and tone allowed must be left largely to the discretion of the presiding judge.

**10. Criminal Law § 166—**

Assignments of error not brought forward in the brief and in respect of which no reason or argument is stated or authority cited will be deemed abandoned. Rule of Practice in the Supmere Court No. 28.

BOBBITT, J., concurring in result.

SHARP, J., joins in concurring opinion.

APPEAL by defendant from *Exum, J.,* December 11, 1967 Criminal Session, GUILFORD Superior Court, High Point Division.

In this criminal prosecution the defendant, Otis Eugene Peele, on arraignment, plead not guilty to a charge of rape — a capital felony. The Grand Jury indictment was drawn under G.S. 14-21, charging that the named defendant, on June 11, 1967 ". . . unlawfully, wilfully, and feloniously did carnally know, rape, and abuse one Cherly Ann Ollis, a female child under the age of twelve years . . . to wit: ten (10) years of age. . . ."

Before pleading to the indictment, the defendant moved to quash upon these grounds: (1) The allegations of the indictment were insufficient to charge the crime of rape under G.S. 14-21; (2) All the evidence before the Grand Jury was incompetent as hearsay; (3) North Carolina General Statutes 14-21 and 15-162.1, when con-

strued together, unduly discourage assertion of the Fifth Amendment right to plead not guilty, and deter the exercise of the Sixth Amendment right to demand a jury trial. The Court overruled the motion to quash. The defendant's Exception No. 4 is assigned as Error No. 1.

The defendant lodged a preliminary motion to suppress the introduction in evidence of clothing, containing bloodstains, worn by the defendant at the time of his arrest. After *voir dire* examination of witnesses, the Court denied the motion to suppress and ruled the evidence admissible. The defendant took exception (No. 26), which is the subject of his Assignment of Error No. 2.

The parties selected the jury by examining the veniremen one at a time. The record discloses that twenty veniremen were challenged for cause by the State, after each had stated he was opposed to capital punishment. Before the challenges for cause were allowed, however, the prospective jurors stated under oath that they had either moral or religious scruples against capital punishment and that on account of their moral and religious scruples it would be impossible for them to return a verdict of guilty as charged in this case without a recommendation of life imprisonment, even though the State proved the guilt of the defendant beyond a reasonable doubt. The Court sustained the State's challenges for cause. The defendant took Exceptions 6 to 25, inclusive. These exceptions form his Assignment of Error No. 3.

"A jury of twelve with one alternate juror, after questions and certain challenges by the State and the defendant, was duly selected and impaneled according to the law and practice in this State in capital cases." The record does not disclose any juror was accepted over defendant's objection, or that he had exhausted his preemptory challenges at the time he passed the jury.

The State examined as witnesses, the victim, her mother, her brother, the lady next door, the doctor who treated the victim for serious injuries, and other witnesses, including a specialist in blood matching. The State introduced the pants and undershorts worn by the defendant at the time of the arrest, which contained what appeared to be fresh bloodstains. The specialist, after analysis, expressed the opinion the stains on the defendant's clothing were made by human blood, compatible with the victim's blood type.

The defendant testified as a witness and denied the assault. He admitted his presence in the apartment where it is alleged to have occurred. He testified the bloodstains on his clothing resulted from an act of intercourse with the victim's mother.

At the close of the evidence, the Court overruled defense motion for directed verdict of not guilty. Neither in the brief nor in the

oral argument does the defendant question the sufficiency of the evidence to make out a case for the jury.

The jury returned its verdict, finding the defendant ". . . Guilty of Rape as charged in the bill of indictment, with the recommendation that his punishment be life imprisonment in State's Prison. . . ." The Court imposed the mandatory life sentence. From the verdict and judgment thereon, as returned by the jury, the defendant appealed.

*T. W. Bruton, Attorney General; Millard R. Rich, Jr., Assistant Attorney General, for the State.*

*Gardner & Wilson by Jerry Wilson for the defendant.*

HIGGINS, J. On this appeal the defendant contends the indictment is fatally defective and the Court's failure so to declare and dismiss the case is the subject of Assignment of Error No. 1. He further contends, if the indictment is held valid, the Court committed errors entitling him to a new trial: (a) By overruling the motion to suppress the introduction of the bloodstained garments worn by the defendant at the time of his arrest (Assignments of Error No. 2); (b) By sustaining the State's for cause challenges of veniremen on account of conscientious scruples against capital punishment (Assignment of Error No. 3); and (c) By reason of the solicitor's unjustly prejudicial argument to the jury (Assignment of Error No. 4).

The indictment was drawn under G.S. 14-21, which provides: "Every person who is convicted of ravishing and carnally knowing any female of the age of twelve years or more by force and against her will, or who is convicted of unlawfully and carnally knowing and abusing any female child under the age of twelve years, shall suffer death: Provided, if the jury shall so recommend at the time of rendering its verdict in open court, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury."

Objections to the indictment on the ground it does not charge the crime of rape or that it was returned on incompetent evidence were abandoned. They are not discussed in the brief. In his motion to quash the defendant relies entirely upon his contention that G.S. 14-21 and G.S. 15-162.1, when construed together, place an impermissible burden upon his right to plead not guilty and to demand a jury trial. The former statute fixes the punishment for rape at death unless the jury recommends life imprisonment. The latter statute permits a defendant, if represented by counsel, to tender a written plea of guilty of rape, and if the plea is accepted by the State, with

the approval of the Court, the tender and acceptance shall have the effect of a jury verdict, with a recommendation that punishment may be imprisonment for life. If the defendant pleads not guilty, as he has a constitutional right to do, and the jury returns a guilty verdict without recommending life imprisonment, the death sentence becomes mandatory. The defendant argues the fear of the death penalty, which he may escape by pleading guilty, places an impermissible restraint on his right to have a jury pass on the question of his guilt or innocence. Fear of the death penalty did not deter or induce the defendant to forego his right to plead not guilty and to have a jury trial. His plea of not guilty was heard by the jury, which he passed as unobjectionable.

As authority in support of his motion to quash, the defendant cites *United States v. Jackson,* decided by the Supreme Court of the United States on April 8, 1968, reported in 36 Law Week, page 4277. Jackson was indicted in the District Court of the United States under the Federal Kidnapping Act (18 U.S.C. 1201(a)), which provides: "Whoever knowingly transports in interstate . . . commerce, any person who has been unlawfully . . . kidnapped . . . and held for ransom . . . or otherwise, . . . shall be punished (1) by death if the kidnapped person has not been liberated unharmed, and if the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed." Jackson moved to quash the indictment upon the ground the death penalty provision of the kidnapping statute makes "the risk of death the price for asserting the right to a jury trial and thereby impairs the free exercise of that right." The Court granted the motion to quash and dismissed the kidnapping count in the indictment.

On direct appeal the Supreme Court held the death penalty provision of the Federal Kidnapping Act imposes an impermissible burden upon the exercise of constitutional rights under the Fifth and Sixth Amendments. Nevertheless, the Court remanded the case for trial and disposition, minus the death penalty. The Court said: "By holding the death penalty clause of the Federal Kidnapping Act unenforceable, we leave the statute an operative whole, free of any constitutional objection." The Court reversed the District Court's order quashing the indictment and returned the cause to the District Court for trial.

The *Jackson* case holds the death penalty provision of the kidnapping act, in the light of the other provisions, violates fundamental rights guaranteed by the Fifth and Sixth Amendments to the Constitution of the United States. The defendant Peele argues, by analogy, the death penalty provision of G.S. 14-21, in the light of

G.S. 15-162.1, violates his fundamental rights guaranteed by the due process clause of the Fourteenth Amendment. In *Duncan v. Louisiana,* 36 U.S.L.W. 4414 (May 20, 1968), the Supreme Court held the Fifth and Sixth Amendment rights herein discussed are made applicable to State trials by the Fourteenth Amendment. This case was decided since the instant case was argued here.

We think there are certain material differences in the Federal Kidnapping Act and in North Carolina Statutes 14-21 and 15-162.1, and that *Jackson* is not authority for holding the death penalty in North Carolina may not be imposed under any circumstances for the crime of rape. In the kidnapping act the law fixes imprisonment in the penitentiary, but provides that the jury may impose the death penalty. The North Carolina rape statute provides that the death penalty shall be ordered unless the jury, at the time it renders its verdict of guilty, as a part thereof fixes the punishment at life imprisonment. True, G.S. 15-162.1 provides that a defendant charged with rape, if represented by counsel, may tender a plea of guilty which, if accepted by the State with the approval of the Court, shall have the effect of a verdict of guilty by the jury with a recommendation the punishment be life imprisonment. The State, acting through its solicitor, may refuse to accept the plea, or the judge may decline to approve it. In either event, there must be a jury trial, although the facts are not in serious dispute. Except as provided in G.S. 15-162.1, the North Carolina practice will not permit a defendant to plead guilty to a capital felony. G.S. 15-187 provides the death sentence shall be executed ". . . against any person in the State of North Carolina *convicted* of a crime punishable by death. . . ." (Emphasis added.)

G.S. 15-162.1 is primarily for the benefit of a defendant. Its provisions may be invoked only on his written application. It provides that the State and the defendant, under rigid court supervision, may, without the ordeal of a trial, agree on a result which will vindicate the law and save the defendant's life. As stated in the *Jackson* case, there are "defendants who would greatly prefer not to contest their guilt." Practical experience indicates only in extreme cases does the jury fail to recommend life imprisonment rather than the death penalty. The possibility of a death penalty, however, has deterring effect — how much, no one knows. This, however, we may say with certainty — the provision for, or fear of, the death penalty did not deter the defendant in the exercise of his rights under the Fourteenth Amendment. He entered a plea of not guilty. He submitted his case to the jury. As a part of the verdict of guilty, the jury fixed the punishment at life imprisonment.

The indictment in *Jackson* was held good. However, that part of the kidnapping act which provided for the death penalty was held to impose an impermissible restraint on the defendant's right to plead not guilty and to have the jury pass on the question of his guilt or innocence. It seems certain, therefore, a conviction under the kidnapping act will support a prison sentence, for years or for life. Likewise, conviction, with the jury's recommendation for life imprisonment, under the indictment against Peele will support a life sentence. Judge Exum, in this case, overruled the motion to quash and correctly held the indictment good. Assignment of Error No. 1 is not sustained.

The mother saw the defendant and the victim in a compromising position on the couch. The defendant left the room. The mother observed the victim's bloody condition and called the officers, who arrived immediately. The officers heard the mother's story, observed the victim's condition, and in view of what they saw and heard, apprehended the defendant in the act of leaving the scene. They took him to police headquarters and there obtained and served a warrant. The officers had ample evidence to authorize the arrest of the defendant without a warrant. G.S. 15-41; *State v. Egerton,* 264 N.C. 328, 141 S.E. 2d 515; *State v. Brown,* 264 N.C. 191, 141 S.E. 2d 311. Incident to the arrest, the officers took the defendant's bloodstained clothing to be held as evidence. Chemical analysis disclosed the stains on the clothing were made by human blood of the same type as the victim's blood. The garments were admissible in evidence. *State v. Bass,* 249 N.C. 209, 105 S.E. 2d 645; *State v. Wall,* 205 N.C. 659, 172 S.E. 216. "It is not an unlawful search or seizure for officers to take from the person under arrest and to examine an article of clothing worn by him. See: 47 Am. Jur., Searches and Seizures, Sec. 53; 5 Am. Jur. 2d, Arrest, Sec. 73; 6 C.J.S., Arrest, Sec. 18. It is not error, nothing else appearing, to admit in evidence, over objection, testimony as to the condition or contents of such garments discovered by such examination or to admit in evidence the garment itself." *State v. Ross,* 269 N.C. 739. The denial of the motion to suppress was not error. The defendant's Assignment of Error No. 2 is not sustained.

The defendant contends the Court committed error in allowing the State to challenge for cause certain of the veniremen on the ground they had moral or religious scruples against capital punishment. However, before allowing the challenge, each prospective juror was further questioned, and each stated ". . . on account of these moral or religious scruples it would be impossible for them *(sic)* to return a verdict of guilty as charged in this case without a recom-

mendation of life imprisonment, even though the State proved the guilt of the defendant beyond a reasonable doubt." Under our decisions, the views expressed were sufficient to sustain the challenge for cause. *State v. Bumpers,* 270 N.C. 521, 155 S.E. 2d 173 (reversed by the United States Supreme Court on other grounds); *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453. The defendant cites, *contra, Crawford v. Bounds,* a Fourth Circuit decision involving a death sentence.

Each party to a trial is entitled to a fair and unbiased jury. Each may challenge for cause a juror who is prejudiced against him. A party's right is not to select a juror prejudiced in his favor, but to reject one prejudiced against him. *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802. In this case, a jury was passed as acceptable by both the State and the defendant. The defendant did not challenge for cause or otherwise any juror on the panel that tried him. The record does not show he exhausted his preemptory challenges. Objection to the jury was not raised ". . . in apt time or in the appointed way". *State v. Anderson,* 228 N.C. 720, 47 S.E. 2d 1; *State v. Koritz,* 227 N.C. 552, 43 S.E. 2d 77; *State v. Kirksey,* 227 N.C. 445, 42 S.E. 2d 613; *State v. Brogden,* 111 N.C. 656, 16 S.E. 170. The Court's action in sustaining the State's challenges did not violate the defendant's right to a jury trial.

In holding the challenges not improper, this Court calls attention to the decision of the Supreme Court of the United States in *Bumpers v. North Carolina* (Case No. 1016), decided on June 3, 1968. Before the Court in that case was this question: "Was the petitioner's 'constitutional right to an impartial jury violated in this capital case when the prosecution was permitted to challenge for cause all prospective jurors who stated they were opposed to capital punishment or had conscientious scruples against imposing the death penalty.'". (A second question involved an illegal search and is not pertinent to the present inquiry.) The Court held, on the pertinent question:

"In *Witherspoon v. Illinois,* decided today, we have held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been removed for cause those who, without more, are opposed to capital punishment or have conscientious scruples against imposing the death penalty. Our decision in *Witherspoon* does not govern the present case, because here the jury recommended a sentence of life imprisonment. The petitioner argues, however, that a jury qualified under such standards must necessarily be biased as well with respect to a defendant's guilt, and that his conviction must accordingly be reversed because of the denial of his right under the Sixth and

Fourteenth Amendments to trial by an impartial jury. *Duncan v. Louisiana,* 391 U.S. 145; *Turner v. Louisiana,* 379 U.S. 466, 471-473; *Irvin v. Dowd,* 366 U.S. 717, 722-723. We cannot accept that contention in the present case. The petitioner adduced no evidence to support the claim that a jury selected as this one was is necessarily 'prosecution prone,' and the materials referred to in his brief are no more substantial than those brought to our attention in *Witherspoon.* Accordingly, we decline to reverse the judgment of conviction upon this basis."

Assignment of Error No. 3 is not sustained.

We have examined the defendant's objection to the argument made to the jury by the Assistant Solicitor. The defendant did not interpose objection. He did not request the judge to stop the argument or to instruct the jury not to consider it. The objection appears for the first time in the case on appeal. He should have excepted and moved for a mistrial before the case went to the jury, rather than wait until after verdict to make complaint. "It is well settled that the exception must be entered at the time." *York v. York,* 212 N.C. 695, 194 S.E. 486; Strong's N. C. Index, 2d Ed., Vol. 1, Appeal and Error, Sec. 33, p. 170. Although we have serious doubt whether objection to the argument is properly presented; nevertheless, we have reviewed that part of the argument set out in the record and conclude it is well within the bounds of legitimate jury debate. "The manner of conducting the argument of counsel, the language employed, the temper and tone allowed, must be left largely to the discretion of the presiding judge. He sees what is done, and hears what is said. He is cognizant of all the surrounding circumstances, and is a better judge of the latitude that ought to be allowed to counsel in the argument of any particular case." *State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424, quoting from *State v. Bryan,* 89 N.C. 531. Assignment of Error No. 4 is not sustained.

In the case on appeal, the defendant has taken a number of exceptions and has made assignments of error thereon. They are set out in the record, but are not discussed in the brief and were not discussed on the oral argument. Neither reason nor authority is cited in support. "Assignments of error not set out in the appellant's brief and in respect of which no reason or argument is stated, or authority cited, will be deemed abandoned." Strong's N. C. Index, 2d Ed., Appeal and Error, Sec. 45, p. 188; Rule 28, Rules of Practice in the Supreme Court; *Mathis v. Siskin,* 268 N.C. 119, 150 S.E. 2d 24.

Because of the gravity of the case, however, we have examined them and find them to be without merit.

In the trial, we find

No error.

BOBBITT, J., concurring in result. The differences between the Federal Kidnapping Act, 18 U.S.C. § 1201(a), considered in *United States v. Jackson*, 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209, and the North Carolina statutes codified as G.S. 14-21 and G.S. 15-162.1, are set forth clearly and accurately in the Court's opinion.

This defendant pleaded not guilty. After trial by jury, the verdict was guilty of rape as charged with the recommendation that defendant's punishment be imprisonment for life. Accordingly, a judgment of life imprisonment was pronounced.

This appeal does not present for decision whether *United States v. Jackson, supra,* invalidates the death penalty under present North Carolina statutes. I would reserve decision of this very important question and withhold any expression of views with reference thereto until the question is directly presented and further explored and considered. Hence, I withhold approval of expressions in the Court's opinion relating to this question.

Except as stated, I concur in the Court's opinion and in the result.

SHARP, J., joins in this opinion.