STATE OF NORTH CAROLINA v. LINWOOD E. MOORE v. RALPH BENTON, JR.

No. 813SC1337

(Filed 15 June 1982)

**Arrest and Bail § 11— forfeiture of bond—setting aside judgment of forfeiture— misapprehension as to applicable statute**

    The trial judge set aside a judgment of forfeiture on a bail bond under the wrong statute where the order of remittance was entered more than 90 days after entry of the judgment on the appearance bond and under G.S. 15A-544(e) the court was without power to remit the judgment "if it appear[ed] that justice require[d]." However, the record contained ample evidence to support a conclusion that "extraordinary cause" had been shown for remittance of the judgment and the trial court upon remand could make such a finding and conclusion under G.S. 15A-544(h).

APPEAL by the New Bern-Craven County Board of Education, judgment creditor and private prosecutor, from *Winberry, Judge.* Order entered 25 September 1981 in Superior Court, CRAVEN County. Heard in the Court of Appeals 26 May 1982.

    The New Bern-Craven County Board of Education appeals from an order setting aside "any and all judgments or executions" against the surety on the appearance bond of a criminal defendant.

    *Attorney General Edmisten, by Assistant Attorney General Kaye R. Webb, for the State, appellant.*

    *Stubbs & Chesnutt, by Marc W. Chesnutt, for the surety, appellee.*

WHICHARD, Judge.

    On 12 December 1979 a warrant issued for defendant's arrest for assault with a deadly weapon with intent to kill. On 21

December 1979 defendant and the surety executed a bond to secure defendant's appearance for trial on that charge.

On 27 December 1979 a warrant issued for defendant's arrest for ravishing and carnally knowing a female of the age of twelve years or more. The court released defendant on the same bond as in the prior assault case.

Upon defendant's failure to appear for arraignment, the court entered duplicate orders for his arrest which were returned unexecuted because defendant could not be found. The court then ordered the appearance bond forfeited; and, after notice to the obligors, on 12 January 1981 it entered judgment against them for the amount of the bond and costs.

On 18 August 1981, more than 90 days after entry of judgment on the bond, and apparently subsequent to issuance of execution on the judgment (*see* G.S. 15A-544(f) (1978)), the surety moved for an order striking the forfeiture and recalling all outstanding executions. The motion alleged that the surety was defendant's employer; that he had not been advised of defendant's release on the second charge under the same bond as on the first; that he had "assumed no obligations under the second charge and had no knowledge of the same at the time of the consolidation of the bond requirement for release"; and that the release on the second charge under the bond he had signed on the first "was an alteration and modification of any liabilities existing on his behalf and substantially changed and modified the conditions existing at the time of the signing of the initial surety agreement."

The surety thereafter filed in support of the motion an affidavit which stated the following:

The surety owned and operated a small farm with one part-time employee and provided the sole support for himself, his wife, and three minor children. In 1980 he did not report any taxable income after expenses, and his prospects for 1981 were not bright.

Defendant, whose family had a history of mental retardation, had worked for the surety for approximately six years. The surety allowed defendant to work for him so defendant could provide partial support for his family. When the initial assault charge was lodged against defendant, the surety signed defendant's bond to

enable defendant to remain employed and thus able to continue partial support for his family.

The surety at no time realized pecuniary gain from signing the bond. He spent considerable time and money searching for defendant. He had been informed that defendant had committed suicide, but he had been unable to confirm it. Payment of the bond would work a tremendous hardship on him and his family and might force him into bankruptcy. He "did not obligate [him]self to assume any bonds" on the second charge, and in his opinion it was the second charge which accounted for defendant's disappearance.

The court found that a hearing was held on the motion; that it examined the motion and affidavit; that a complete review of the files on both charges, and of the motion and affidavit, indicated "*that equity would best be served* by the setting aside of [the] Judgment upon payment of the costs by the Surety . . . ." (Emphasis supplied.) It then ordered that "any and all judgments or executions against the Surety . . . are set aside *in the interest of justice* upon payment of the court costs by the Surety . . . ." (Emphasis supplied.)

In *State v. Rakina and State v. Zofira,* 49 N.C. App. 537, 539, 272 S.E. 2d 3, 4-5 (1980), *disc. rev. denied,* 302 N.C. 221, 277 S.E. 2d 70 (1981), we find the following:

The purpose of N.C. Gen. Stat. § 15A-544, which regulates the forfeiture of bonds in criminal proceedings, is to establish "an orderly procedure for forfeiture." *Id.,* (Official Commentary). After entry of judgment of forfeiture, subsections (e) and (h) provide two situations in which the court is authorized to order remission. Subsection (e) provides:

At any time within 90 days after entry of the judgment against a principal or his surety, or on the first day of the next session of court commencing more than 90 days after the entry of the judgment, the court may direct that the judgment be remitted in whole or in part, upon such conditions as the court may impose, if it appears that justice requires the remission of part or all of the judgment.

Under subsection (e) the court is guided in its discretion as "justice requires." Execution is mandatory under subsection (f) "[i]f a judgment has not been remitted within the period provided in subsection (e) above. . . ." Subsection (h) becomes applicable after execution of the judgment. Subsection (h) provides in pertinent part:

> For extraordinary cause shown, the court which has entered judgment upon a forfeiture of a bond may, after execution, remit the judgment in whole or in part and order the clerk to refund such amounts as the court considers appropriate.

Under subsection (h), the court in its discretion is authorized to remit the judgment "[f]or extraordinary cause shown."

The record establishes that the order of remittance here was entered more than 90 days after entry of judgment on the appearance bond. The courts will take judicial notice of the dates of the terms of the superior courts, *State v. Anderson*, 228 N.C. 720, 724-25, 47 S.E. 2d 1, 4 (1948); *Grady v. Parker*, 228 N.C. 54, 57, 44 S.E. 2d 449, 451 (1947), including the date of commencement of such a term, *Freeman v. Bennett*, 249 N.C. 180, 182, 105 S.E. 2d 809, 810 (1958). Accordingly, we take judicial notice of the fact that the next criminal term of Craven Superior Court after the 90 day period following entry of the judgment convened 20 April 1981. The order appealed from thus was entered neither within 90 days after entry of the judgment nor on the first day of the next session of court commencing after that 90 day period. The court was, then, without power to remit the judgment "if it appear[ed] that justice require[d]" pursuant to G.S. 15A-544(e).

The recitals in the order "that equity would best be served by the setting aside of [the] Judgment" and that the judgment was set aside "in the interest of justice" indicate that the order was entered under a misapprehension as to the applicable statute. The 90 day period during which the court could set aside the judgment "in the interest of justice" pursuant to G.S. 15A-544(e) had expired. The only extant recourse was to set aside the judgment "[f]or extraordinary cause shown" pursuant to G.S. 15A-544(h). While the record contains ample evidence to support a conclusion that "extraordinary cause" had been shown, the trial court should "make brief, definite, pertinent findings and conclu-

sions" to that effect. *Rakina and Zofira,* 49 N.C. App. at 541, 272 S.E. 2d at 5.

Because the recitals indicate that the order appealed from was entered under a misapprehension as to the applicable statute, and because the order does not contain appropriate findings and conclusions indicating that the requisite "extraordinary cause" to set aside the judgment has been shown, the order is vacated; and the cause is remanded to the trial court for entry of appropriate findings, conclusions, and order or judgment pursuant to G.S. 15A-544(h).

Vacated and remanded.

Judges CLARK and WEBB concur.